[Submitting Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Meta Browser Tracking Litigation | Case No. 4:22-cv-05267-JST<br><br>[PROPOSED] **STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

## 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") ("eDiscovery") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

## 2. COOPERATION AND PROPORTIONALITY

The parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The parties' cooperation includes propounding reasonably particular discovery requests, identifying appropriate limits to eDiscovery, including limits on custodians, identifying relevant and discoverable ESI, establishing time periods for eDiscovery, promptly identifying custodians, providing reasonable estimates for completion of the production of documents in response to discovery requests, meeting and conferring in good faith regarding search terms, and other parameters to limit and guide preservation and eDiscovery issues.  The failure of counsel or the parties to cooperate in facilitating and reasonably limiting eDiscovery requests and responses will be considered in cost-shifting determinations. The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1).

## 3. LIAISON

Each party shall designate or make available, an individual or individuals as eDiscovery Liaison(s) who must:

(a) be prepared to meet and confer on eDiscovery-related matters and to participate in eDiscovery dispute resolution;

(b) be knowledgeable about the party's eDiscovery efforts;

(c) be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

(d)     be, or have reasonable access to those who are, knowledgeable about the technical aspects of eDiscovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

4.    **PRESERVATION**

Each party is responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession, custody or control consistent with Sedona Conference Principle 6 which instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information."[1] The parties have discussed their preservation obligations and needs and agree that preservation of relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a)     Parties will preserve non-duplicative, relevant information currently in their possession, custody, or control; .

(b)     Subject to and without waiving any protection described in Section 4(a) above, the parties agree to meet and confer to discuss the following scope of preservation, which may include the following data points:

1.    The date range of preservation for ESI created or received;

2.    The sources and types of relevant ESI to preserve;

3.    The number of custodians per party for whom ESI will be preserved, leaving the option open to discuss additional custodians as reasonably necessary (i.e., when specific evidence warrants expanding the initial custodian list) when relevant;

(c)     The following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), will be retained pursuant to standard business

---

[1] The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 118 (2018).

2
[~~PROPOSED~~] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 4:22-cv-05267-JST

processes, but not otherwise preserved, searched, reviewed, or produced, unless ordered by the Court upon a motion of a party:

1. backup systems and/or tapes used for disaster recovery;
2. systems no longer in use that cannot be accessed by using systems currently in use by the party;
3. Voice messages;
4. Instant messages and chats that are not chronicled to an email archive system;
5. Sound recordings, including, without limitation, .mp3/.mp4 and .wav files; and
6. Video recordings.

(d) In addition to the agreements above, the parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved:

1. Deleted, slack, fragmented, or unallocated data only accessible by forensics.
2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
3. On-line data such as temporary internet files, history, cache, cookies, and the like.
4. Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates.
5. Mobile device activity logs.
6. Server, system, or network logs.
7. Dynamic fields in databases or log files not stored or retained in the usual course of business.
8. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party.

9. Other forms of ESI whose preservation requires unreasonable, disproportionate, and/or non-routine, affirmative measures that are not utilized in the ordinary course of business.

(e) The Parties acknowledge that Meta Platforms, Inc. is subject to various privacy regulations and court orders that require the disposition of identifiable user data. To the extent that identifiable user data subject to routine disposition as required by privacy regulations and court orders is identified as relevant to the claims or defenses in this case, the parties will meet and confer on preservation of such information as it exists at that time, including the feasibility of such preservation and the type and import of the user data implicated. No less than three (3) business days prior to any such meet and confer, Meta will provide Plaintiffs with copies of any privacy regulation or court order requiring routine disposition of identifiable user data relevant to the claims or defenses in this case.

5. **SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will disclose the method or methods they are employing to identify the appropriate set(s) of documents for review and production.

(a) Search Terms: Where potentially responsive ESI will be searched using search terms, the parties agree that the producing party will investigate what search terms and source files will be reasonably likely to uncover responsive information and then propose those search terms and source files for the requesting party's consideration. Specifically, a producing party shall disclose the custodians or other non-custodial sources, date range, and search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information. Nothing in this paragraph shall be interpreted to require the production of information protected by the attorney-client privilege or the work product doctrine.

(b) The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing party's name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. Use of narrowing search criteria (e.g., "and," "but not,"

4

"w/x") is encouraged to limit the production, and the parties agree to meet and confer, in good faith, to develop such terms.

(c) Proposed search terms will be subject to negotiation with and input from the requesting party. The requesting party may ask for (and the producing party will not unreasonably withhold) reasonably necessary qualitative and quantitative information regarding search methodology, including but not limited to, production of search term hit reports, with unique document "hit" counts (i.e., documents that do not hit on other search terms or queries and that have been de-duped within the set).

(d) The parties will reach an agreement on the search terms or queries to be used before the producing party applies those search terms or queries to potentially responsive ESI. Reasonable efforts will be made to open any password protected files and expand any archive containers (e.g., .zip files) prior to running search terms or any search methodology.

(e) Agreement on a search methodology does not relieve a Party of its obligation under the Federal Rules of Civil Procedure to conduct a reasonable search and produce all relevant and responsive documents of which a party is aware, regardless of whether they contain agreed-upon search terms or are responsive to any other search methodology agreed to by the parties or ordered by the Court.

(f) To the extent a party is aware of non-duplicative documents that are relevant, responsive, non-privileged, reasonably accessible, and within the party's possession, custody, and/or control, such documents will be produced regardless of whether they contain search terms or are responsive to any other search methodology agreed to by the parties or ordered by the Court.

The parties acknowledge that there may be subsequent occasions on which potential modification to a previously agreed upon search protocol may be warranted. Should such an instance arise, the parties agree to meet and confer about whether modifications to a search methodology are necessary or warranted. If a party requests such a meet and confer, the parties will meet and confer within seven days.

(a) Technology Assisted Review. A Party may use technology assisted review (TAR) or similar advanced analytics to filter out or exclude non-responsive documents.[2] A

---

[2] A producing Party need not disclose whether it is using TAR, Continuous Active Learning (CAL), or any other predictive coding to prioritize the review of documents collected.

Receiving Party may request the following information about a Producing Party's use of TAR or similar advanced analytics limited to the following: (1) the custodians and data sources against which TAR or advanced analytics will be run; (2) the TAR or advanced analytics tool being used and vendor; and (3) the measure(s) used to validate the results of the TAR methodology or similar advanced analytics.

(b) Nothing in this Order may be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the requesting party's discovery requests. Similarly, nothing may be construed or interpreted as precluding a producing party from performing, by any means, a privilege review of documents determined to be relevant. Further, nothing in this Order requires the production of documents captured by any search term that are irrelevant to the Requesting Party's request, privileged or otherwise protected from disclosure.

(c) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. For example, Hash values may be filtered out during this process using the National Software Reference Library ("NSRL") NIST hash set list.

(d) De-Duplication. Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (e.g., based on MD5 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through MD5 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication. To accommodate for rolling productions, for ESI that is removed as a duplicate from earlier productions, the producing party should provide an overlay file along with or within a reasonable time after each production.

(e) Email Threading. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email"), and need not produce earlier, less inclusive email messages or "thread members" that are fully

contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced. Where a prior email contains an attachment that is not included in the Last in Time Email, the prior email and attachment shall be produced. Notwithstanding the foregoing, if the producing party redacts some or all of an earlier "thread member" of an email string, or an attachment to such an email, on the basis of attorney-client privilege, work-product doctrine, or any other applicable privilege, immunity or protection, the entire string shall be produced containing the redacted material.

(f) No provision of this Order affects any inspection of source code that is responsive to a discovery request consistent with the protective order governing this case.

(g) On-site inspection will not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties. Inspection of any mobile device in connection with discovery in this case will not be permitted absent a demonstration by the Requesting Party of specific need and good cause or by agreement of the parties.

**6. PRODUCTION FORMATS**

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

**7. PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer concerning whether the production of responsive ESI should occur in phases.

**8. DOCUMENTS PROTECTED FROM DISCOVERY**

(a) The Parties and Court have entered a separate Order under Fed. R. Evid. 502(d) that governs the production of documents protected from discovery.

(b) Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

(c) Communications involving or work product associated with inside or outside counsel for the parties related to this case that post-date the filing of the complaint need not be placed on a privilege log.

(d) Parties agree to log only the Last In Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last In Time Email.

(e) Communications may be identified on a privilege log by category, rather than individually, if appropriate.

(f) The parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines. Privilege logs may be produced on a rolling basis or after all productions are complete, but prior to the close of discovery.

(g) The parties will meet and confer concerning specific content of and procedures to be used related to production of the parties' privilege logs.

(h) Nothing in this Order requires disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

9. **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

10. **COSTS**

Each party shall bear its own e-discovery costs, including costs for exemplification and copying.

**11.     MODIFICATION**

This order may be modified by written agreement of the parties or by the court for good cause shown.

Dated: April 28, 2023                                       Respectfully submitted,

By: */s/ Reid Gaa*
Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
Kimberly Macey (SBN 342019)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
kmacey@girardsharp.com
rgaa@girardsharp.com

John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
jnelson@milberg.com

Gary M. Klinger (*pro hac vice* forthcoming)
Alexandra M. Honeycutt (*pro hac vice* forthcoming)
Nick Suciu (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com
ahoneycutt@milberg.com
nsuciu@milberg.com

*Attorneys for Plaintiffs*

Dated: April 28. 2023

By: */s/ Serrin Turner*
Elizabeth L. Deeley (Bar No. 230798)
*elizabeth.deeley@lw.com*
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone:  +1.415.391.0600

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
Marissa Alter-Nelson (*pro hac vice*)
*Marissa.alter-nelson@lw.com*
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, New York 10022-4834
Telephone:  +1.212.906.1200

*Attorneys for Defendant Meta Platforms, Inc*

**[PROPOSED] ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Date: May 2, 2023

_____
Hon. Jon S. Tigar
United States District Judge

**ATTESTATION**

I, Reid Gaa, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil L.R. 5-1(h)(3), I hereby attest that all counsel have concurred in this filing.

Dated:  April 28, 2023              /s/ Reid Gaa
                                    Reid Gaa

# APPENDIX 1: PRODUCTION FORMAT

1. **Production Components.** Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

   (a) an ASCII (or UTF8) delimited data file (.DAT) using standard delimiters;

   (b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance or Relativity);

   (c) TIFF images;

   (d) and document level .TXT files for all documents containing extracted full text or OCR text.

   (e) Parent-child relationships will be maintained in production. Links within a document are not considered attachments. To the extent reasonably feasible, the attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.
   If a particular document warrants a different production format, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

2. **Production Media and Access Controls.** Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media shall also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the producing party's name; (d) the production date; and (e) the Bates Number range of the materials contained on the Production Media. Productions shall

have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel or other files that cannot be understood reasonably unless displayed in native format.

Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3. **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

4. **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate or edit manually any of the fields below if such fields cannot be extracted from a document, except that they will use reasonable efforts to populate the following fields: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) CUSTODIAN, (g) ALLCUSTODIANDUPE, (h) CONFIDENTIALITY,

(i) REDACTIONS, (j) NATIVEFILEPATH, (k) TEXTFILEPATH, and (l) HASHVALUE, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
| --- | --- |
| **BEGBATES** | Beginning Bates number as stamped on the production image |
| **ENDBATES** | Ending Bates number as stamped on the production image |
| **BEGATTACH** | First production Bates number of the first document in a family |
| **ENDATTACH** | Last production Bates number of the last document in a family |
| PRODVOL | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| **CONFIDENTIALITY** | Confidentiality designation assigned to document |
| **NATIVEFILEPATH** | Native File Link (Native Files only) |
| **TEXTFILEPATH** | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| **AUTHOR** | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| **DOCDATE** | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| **DATEMODIFIED** | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| DOCTYPE | The kind of application or file a document came from. |
| CREATETIME | The time the file was created. |
| TIMELASTMOD | The time changes were last made to a file. |

| Field Name | Field Description |
|---|---|
| MODIFIEDBY | Person who last modified or saved the item. |
| FILENAME | Filename of an electronic document |
| FILEPATH | Original path to the individual source file. Includes path up to and including internal path of containers. This should be the path where the document is kept in the usual course. |
| **NATIVEPATH** | The path to a copy of a file within the production deliverable. |
| FILEEXT | The file extension of the native file. |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| **FROM** | The sender of the email |
| **TO** | All recipients that were included on the "To" line of the email |
| **CC** | All recipients that were included on the "CC" line of the email |
| **BCC** | All recipients that were included on the "BCC" line of the email |
| **DATETIMERECEIVED** | Date and time email was received (format: MM/DD/YYYY HH:MM SS) |
| **DATETIMESENT** | Date and time email was sent (format: MM/DD/YYYY HH:MM SS) |
| PARENTDATE | The date of the parent document. For emails this will be date sent and for non-emails date last modified. |
| **EMAILSUBJECT** | Subject line of email pulled from the document properties |
| **REDACTIONS** | Indicate Yes/No if document redacted |
| REDACTIONBASIS | The basis for any redactions made to the document by the producing party (*e.g.*, A-C Priv, Work Prod., etc.) |

5.   **TIFFs.**  Documents that exist only in hard copy format shall be scanned and produced as

TIFFs.  Documents that exist as ESI shall be converted and produced as TIFFs, except as

provided below. The parties shall take reasonable efforts to process presentations (*e.g.* MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

6. **Color.** To the extent reasonably feasible, the parties shall produce documents in color where the document in its original format contained color (e.g., charts and graphics, tracked changes, or other highlights). Color images should be produced with a high quality setting as to not degrade the original image.

7. **Text Files.** A document level text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns, and rows.

8. **Native files.** Spreadsheets (*e.g.* MS Excel) will be produced in native format unless redacted, in which instance, spreadsheets will be produced in TIFF with OCR Text Files. The requesting party may also ask for (and the producing party will not unreasonably withhold) production of individual presentation files (*e.g.*, PowerPoint) in native format

where native format is reasonably necessary to understand the meaning of the presentation. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. If a native file originally had track changes, comments, or other collaborative change features turned on, the .TIFF file will display those changes in the converted image file; provided, however, that if doing the foregoing is not reasonably feasible for any given file(s), the producing party will so advise the requesting party and the parties will meet and confer regarding an alternative process. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Native files will be produced in a separate folder on the production media. TIFF images of e-mail messages should include the BCC line. Upon request from the receiving party that any files be produced in native format (identified by Bates number), the parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably denied.

9. **Redactions**. A Party may not redact information on the basis that it believes the information to be irrelevant. If the parties are redacting information from a page, they shall electronically "burn" the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s). If documents that the parties have agreed to produce in native format need to be redacted, the parties agree to meet and confer in good faith on how to best produce the documents so that proper formatting and usability are maintained. Extracted text will not be provided for electronic documents that have been redacted. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.

10. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

11. **Databases and Other Structured Data.** The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party, by, for example, requiring development of reports and/or software code to extract the information. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer to reach an agreement on alternative methods to enable the requesting party to view the ESI. To facilitate the meet and confer process and production of this information, the requesting party may ask for (and the producing party shall not unreasonably withhold) sample reports reflecting the types of information and fields contained in the database(s), where such reports are reasonably available and will not be unduly burdensome to provide.

12. **Physical/Hard Copy Documents**. Nothing herein shall relieve the parties of any obligations they may have to search for responsive Documents in hard copy form. The parties shall produce documents that exist solely in physical hard-copy format following this ESI Protocol. The metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was collected. The following objective coding fields should be provided, if applicable: (1) beginning Bates number, (2) ending Bates number, (3) page count, and (4) source location/custodian. The

documents should be logically unitized for production to the extent reasonably practicable. Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable. The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents. The ".tiff" files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto skewing" and "auto-rotation" should be turned on during the OCR process. The parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution