Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
Kimberly Macey (SBN 342019)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
kmacey@girardsharp.com
rgaa@girardsharp.com

Gary M. Klinger (*pro hac vice*)
Alexandra M. Honeycutt (*pro hac vice*)
Alexander Wolf (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON
 PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com
ahoneycutt@milberg.com
awolf@milberg.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re Meta Browser Tracking Litigation | Case No. 4:22-cv-05267-JST<br><br>**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE**<br><br>Date: June 22, 2023<br>Time: 2:00 p.m.<br>Courtroom: 6 – 2nd Floor<br>Judge: Hon. Jon S. Tigar |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS ................................................................................... 2

    A.     Meta's Surreptitious Tracking of Facebook Mobile App Users. ................... 2

    B.     Felix Krause Reports on Meta's Conduct; Meta Contacts Krause. ............... 4

III.   LEGAL STANDARD .......................................................................................... 5

IV.    ARGUMENT ....................................................................................................... 5

    A.     Meta's Fact-Based Arguments Are Improper and Invert the Pleading Standard. ........... 5

        1.     Meta's Exhibits Are Neither Incorporated by Reference Nor Subject to Judicial Notice. ...................................................... 6

            a.     The Incorporation by Reference Doctrine Does Not Permit Meta to Introduce a Self-Serving Version of the Facts. ........................ 7

            b.     The Contents of Meta's Exhibits Cannot Be Judicially Noticed Because They Are Subject to Reasonable Dispute. ................. 9

        2.     Krause's Reporting Does Not Contradict Plaintiffs' Allegations. ..................... 11

            a.     Krause Never Disavowed His Findings Regarding Meta's Tracking. ..... 11

            b.     Krause Did Not Find That Meta Complies with Apple's ATT Policy. .. 13

            c.     Plaintiffs' Tracking Allegations Are Plausible and Adequately Supported. ..................... 14

    B.     Plaintiffs State a Claim of CFAA Violations. ............................................... 17

    C.     Plaintiffs' Equitable Relief and UCL Claims Should Proceed. .................... 19

        1.     Plaintiffs Sufficiently Plead They Lack an Adequate Remedy at Law. ............ 19

        2.     Meta's Unfair Competition Caused Economic Harm to Plaintiffs. ................... 20

V.     CONCLUSION.................................................................................................... 21

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND REQUEST FOR JUDICIAL NOTICE
CASE NO. 4:22-cv-05267-JST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ablaza v. Sanofi-Aventis U.S. LLC*,
   2023 WL 2942983 (N.D. Cal. Apr. 13, 2023) ................................................................. 20

*Alamilla v. Hain Celestial Grp., Inc.*,
   30 F. Supp. 3d 943 (N.D. Cal. 2014) ............................................................................ 16

*AliveCor, Inc. v. Apple Inc.*,
   592 F. Supp. 904 (N.D. Cal. 2022) ........................................................................... 8, 17

*Andrews v. Sirius XM Radio Inc.*,
   932 F.3d 1253 (9th Cir. 2019) ....................................................................................... 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................................... 5

*Association for L.A. Deputy Sheriffs v. County of Los Angeles*,
   648 F.3d 986 (9th Cir. 2011) ........................................................................................... 5

*Baird v. Samsung Elecs. Am., Inc.*,
   522 F. Supp. 3d 679 (N.D. Cal. 2021) .......................................................................... 10

*Baron v. Hyrecar Inc.*,
   2022 WL 17413562 (C.D. Cal. Dec. 5, 2022) ................................................................. 9

*Battle v. Taylor James, LLC*,
   607 F. Supp. 3d 1025 (C.D. Cal. 2022) ........................................................................... 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................... 5, 15

*Brady v. Delta Energy & Commc'ns, Inc.*,
   2023 WL 2683203 (C.D. Cal. Jan. 25, 2023) .................................................................. 6

*Brown v. Food for Life Baking Co.*,
   2023 WL 2637407 (N.D. Cal. Feb. 28, 2023) ............................................................... 20

*Brown v. Google LLC*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........................................................................ 10

*Bushy v. Green*,
   2022 WL 2442739 (C.D. Cal. Apr. 6, 2022) ................................................................... 9

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. 2021) .......................................................................... 21

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND REQUEST FOR JUDICIAL NOTICE
CASE NO. 4:22-cv-05267-JST

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021) ................................................................. 10

*DalPoggetto v. Wirecard AG*,
    2020 WL 2374948 (C.D. Cal. Apr. 15, 2020) ......................................................... 8

*Derr v. Ra Med. Sys., Inc.*,
    2021 WL 1117309 (S.D. Cal. Mar. 24, 2021) ....................................................... 14

*Eastman v. Apple, Inc.*,
    2019 WL 3934805 (N.D. Cal. Aug. 20, 2019) ...................................................... 10

*Edelson v. Travel Insured Int'l, Inc.*,
    2021 WL 4334075 (S.D. Cal. Sept. 23, 2021) ...................................................... 20

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ................................................................................................. 5

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ........................................................................ 17, 18

*Geary v. Parexel Int'l Corp.*,
    2023 WL 2576836 (N.D. Cal. Mar. 20, 2023) ....................................................... 8

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ............................................................... 15

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) .............................................................................. 18

*Hrapoff v. Hisamitsu Am., Inc.*,
    2022 WL 2168076 (N.D. Cal. June 16, 2022) ..................................................... 20

*In re Adobe Sys., Inc. Privacy Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................. 21

*In re Anthem, Inc. Data Breach Litig.*,
    2016 WL 3029783 (N.D. Cal. May 27, 2016) ...................................................... 21

*In re Cal. Bail Bond Antitrust Litig.*,
    511 F. Supp. 3d 1031 (N.D. Cal. 2021) ................................................................. 9

*In re Finjan Holdings, Inc. Sec. Litig.*,
    2021 WL 4148682 (N.D. Cal. Sept. 13, 2021) .................................................... 16

*In re Google Assistant Privacy Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ........................................................... 10, 16

*In re iPhone Application Litigation*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................... 17

iii

*In re Yahoo! Inc. Consumer Data Sec. Breach Litig.*,
   313 F. Supp. 3d 1113 (N.D. Cal. 2018) ................................................................. 10

*Johnson v. In Suk Jun*,
   2020 WL 709307 (N.D. Cal. Feb. 12, 2020) ........................................................ 16

*Johnson v. Riverside Healthcare Sys., LP*,
   534 F.3d 1116 (9th Cir. 2008) ............................................................................... 5

*Katz-Lacabe v. Oracle Am., Inc.*,
   2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ............................................... 9, 10, 20

*Ketayi v. Health Enrollment Grp.*,
   516 F. Supp. 3d 1092 (S.D. Cal. 2021) ................................................................... 8

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ..................................................................... 6, 7, 8, 9

*Kip's Nut-Free Kitchen, LLC v. Kips Dehydrated Foods, LLC*,
   2019 WL 3766654 (S.D. Cal. Aug. 9, 2019) .......................................................... 8

*Loh v. Future Motion, Inc.*,
   2022 WL 2668380 (N.D. Cal. July 11, 2022) ...................................................... 15

*Lopez v. Apple*,
   519 F. Supp. 3d 672 (N.D. Cal. 2021) ................................................................. 16

*Makaeff v. Trump Univ., LLC*,
   715 F.3 254 (9th Cir. 2013) .................................................................................. 10

*Michelle v. California Dep't of Corr. & Rehab.*,
   2021 WL 1516401 (E.D. Cal. Apr. 16, 2021) ......................................................... 8

*Molica v. Synchrony Bank*,
   2021 WL 9315272 (N.D. Cal. Sept. 14, 2021) ....................................................... 8

*Oddo v. United Techs. Corp.*,
   2022 WL 577663 (C.D. Cal. Jan. 3, 2022) .......................................................... 20

*Overstock.com v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 688 (2007) .............................................................................. 20

*Pac. Overland, LLC v. Kauai Overlander*,
   2018 WL 3821070 (N.D. Cal. Aug. 10, 2018) ...................................................... 11

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*,
   899 F.3d 1081 (9th Cir. 2018) ................................................................................ 9

*Pollock v. Fed. Ins. Co.*,
   2022 WL 912893 (N.D. Cal. Mar. 29, 2022) ......................................................... 6

iv

*Produce Pay, Inc. v. Izguerra Produce, Inc.*,
  39 F.4th 1158 (9th Cir. 2022) ................................................................ 11, 12, 14, 16

*Rollins v. Dignity Health*,
  338 F. Supp. 3d 1025 (N.D. Cal. 2018) ................................................................ 9, 10

*Rosenbloom v. Pyott*,
  765 F.3d 1137 (9th Cir. 2014) ................................................................ 16

*Royal 4 Sys., Inc. v. RLI Ins. Co.*,
  2022 WL 19263327 (C.D. Cal. Dec. 9, 2022) ................................................................ 6

*Sgro v. Danone Waters of N. Am. Inc.*,
  532 F.3d 940 (9th Cir. 2008) ................................................................ 8

*Smith v. City of Oakland*,
  612 F. Supp. 3d 951 (N.D. Cal. 2020) ................................................................ 16

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ................................................................ 19

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ................................................................ 17

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) ................................................................ 18, 19

*Van Buren v. United States*,
  141 S. Ct. 1648 (2021) ................................................................ 18

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
  472 F. Supp. 3d 649 (N.D. Cal. 2020), *aff'd*, 17 F.4th 930 (9th Cir. 2021) ................................................................ 18

*Zeller v. Optavia, LLC*,
  2022 WL 17858032 (S.D. Cal. Dec. 22, 2022) ................................................................ 6

**Statutes**

18 Pa. Stat. and Cons. Stat. Ann. § 5701 ................................................................ 3

18 U.S.C. § 1030 ................................................................ 3

18 U.S.C. § 1030(a)(2) ................................................................ 17, 18

18 U.S.C. § 1030(c)(4)(A)(i) ................................................................ 19

18 U.S.C. § 1030(e)(11) ................................................................ 19

18 U.S.C. § 1030(g) ................................................................ 19

18 U.S.C. § 2510 ................................................................ 3

v

Cal. Bus. & Prof. Code § 17200 ................................................................................. 3

Cal. Penal Code § 630 ............................................................................................... 3

Fla. Stat. Ann. § 934.01 ............................................................................................. 3

Illinois Eavesdropping Act, 720 ILCS 5/14-1 .......................................................... 3

Mass. Gen. Laws Ann. 272 § 99 ............................................................................... 3

Md. Cts. & Jud. Pro. § 10-401 .................................................................................. 3

Mo. Stat. § 542.400 ................................................................................................... 3

Wash. Rev. Code Ann. § 9.73.030 ............................................................................ 3

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 6, 8

Fed. R. Civ. P. 15 ..................................................................................................... 21

Fed. R. Civ. P. 8(a)(2) ............................................................................................... 5

Fed. R. Evid. 201(b) ................................................................................................... 7

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND REQUEST FOR JUDICIAL NOTICE
CASE NO. 4:22-cv-05267-JST

1    **I.     INTRODUCTION**

2           In April 2021 Apple changed the privacy settings on its devices. Apple began precluding apps

3    like Facebook from tracking a user's activity on third-party websites without first obtaining the user's

4    express consent. Until then, Facebook and other apps routinely tracked Apple device user activity on

5    third-party sites, compiling valuable data for use in digital advertising. Apple's simple change

6    threatened a major source of advertising revenue for Meta. In response, Meta devised a technical

7    workaround: When users click a link to a third-party website while inside the Facebook app, the app

8    renders the web page within Facebook's in-app browser instead of the users' default web browser,

9    without informing the user. From there, by injecting code into the third-party websites rendered within

10   the Facebook app, Meta intercepts, views, and records user activity on those sites, including the links a

11   person clicks and what the person types. Through the use of this contrivance, Meta has collected large

12   quantities of users' data without their consent—even when, like the Plaintiffs in this case, the users

13   configured their Apple device settings to prevent such tracking.

14          Instead of focusing on whether Plaintiffs' allegations, taken as true, state a claim, Meta's motion

15   to dismiss contests Plaintiffs' factual allegations, conflating extrinsic source material Plaintiffs

16   considered (among other things) with the Complaint itself and imparting its own spin to the source

17   material. *See* Motion to Dismiss, ECF No. 58 ("Mot."). In furtherance of its factual challenge, Meta

18   seeks judicial notice of the contents of blog posts as well as factual assertions in several other

19   documents. *See* Request for Judicial Notice, ECF No. 59 ("RJN"). Meta selectively quotes from the blog

20   post (ECF No. 58-2), while failing to disclose that the version it attaches as an exhibit is an *updated*

21   version of the post, in which the blogger, Felix Krause, noted Meta's *responses* to his findings. Even the

22   updated post in no way contradicts Plaintiffs' allegations, as Krause never disavows his conclusion that

23   Meta uses the Facebook in-app browser to inject code into third-party websites. Meta also erroneously

24   conflates Krause's findings about pcm.js JavaScript with his findings about event listeners—the two are

25   distinct pieces of code. And Meta omits his subsequent reiteration of his findings and description of

26   Meta's use of event listeners.

27

28

Once the Krause issues are dispensed with, Meta's limited challenges to Plaintiffs' claims fall away. The Consumer Fraud and Abuse Act prohibits just this sort of electronic incursion that goes beyond the authority actually conferred on the defendant. And Meta's undisclosed tracking prevented Plaintiffs from controlling their own personal information and diminished its value, concrete forms of loss that courts have repeatedly recognized.

For the reasons explained in more detail below, Meta's motion to dismiss should be denied.

## II.   STATEMENT OF FACTS

### A.   Meta's Surreptitious Tracking of Facebook Mobile App Users.

Although known as a social media company, Meta's core business model is based on digital advertising and collecting user data.[1] ¶ 56. Meta generates revenue by selling digital ads that target its vast user base, taking advantage of the extensive information it amasses about those users. ¶¶ 56-58. Through its access to this information, Meta can offer its customers a massive repository of personal data, allowing them to target advertisements to Facebook users based on characteristics such as age, gender, location, preferences, and behaviors. ¶ 58. Digital advertising has been extremely lucrative for Meta, generating over $114 billion in revenue for the company in 2021 and accounting for about 97% of its total revenue in that year. ¶ 60.

Apple's introduction of a new software update—the iOS 14.5 update—in April 2021 threatened to take a large bite out of Meta's profits. ¶ 67. With iOS 14.5, Apple introduced App Tracking Transparency ("ATT"), which gave Apple users enhanced control over how apps track them as they navigate to third-party websites. ¶ 66. This new framework requires apps, such as Facebook, to obtain users' affirmative consent before tracking them across third-party websites. ATT does so through a mandatory pop-up message that appears when an app is first launched, and asks if the user will permit the app to track their activities across other companies' apps and websites. ¶¶ 66-68. The first option presented to users is "Ask App Not to Track." ¶ 68. When this change took effect, Meta lost access to a key source of data that allowed it and its digital advertising customers to measure the effectiveness of targeted advertisements. ¶¶ 62-65. In May 2021, shortly after the iOS 14.5 update was introduced, 96%

---

[1] "¶" references are to the Consolidated Class Action Complaint. ECF No. 36.

of iPhone users in the United States had *not* consented to being tracked by apps on their device. ¶ 79. The impact on Meta's bottom line was immediate: it experienced massive decreases in ad revenue in Q2 and Q3 2022 compared to the same time periods in the previous year. ¶¶ 75-76 (noting reports of $10 billion cost to Meta in the first year of Apple's new privacy protocol).

To regain access to this lost data, Meta developed a technical workaround using the in-app browser on the popular Facebook mobile app. ¶ 81. When a Facebook mobile app user clicks a link to an external website on the Facebook app, the web page is automatically rendered inside the Facebook app via the in-app browser rather than the Apple device's default browser application, such as Safari or Chrome. *Id.* As this process occurs, the Facebook in-app browser injects code into the external web page, which allows Meta to surveil and extract information about users and their web-browsing activities. ¶¶ 81, 97. In short, the code injected by the Facebook in-app browser allows Meta to intercept the substance of Plaintiffs' and Facebook mobile users' online communications—all without ever informing the user. ¶¶ 92, 94.

Plaintiffs Gabriele Willis, Shelby Cooper, Rama Kolesnikow, Lisa Bush, David Alzate, Mark Letoski, Louis Green, Ed Rennie, Teia Pittman, Raven Johnson, Chanel Robinson, Kevin Zenstein, Mary Thew, and Lisa Evans are Apple device owners who used the Facebook mobile app while running iOS version 14.5 or later and who configured their settings to not allow the Facebook app to track them. ¶¶ 13-54. They allege that Meta's interception of their private communications with third-party websites, which occurred without their knowledge or consent, violates the Wiretap Act, 18 U.S.C. § 2510 *et seq.*; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*; the California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq.*; the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; the Florida Security of Communications Act, Fla. Stat. Ann. § 934.01 *et seq.*; the Illinois Eavesdropping Act, 720 ILCS 5/14-1 *et seq.*; the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Stat. and Cons. Stat. Ann. § 5701 *et seq.*; the Washington Privacy Act, Wash. Rev. Code Ann. § 9.73.030; the Missouri Wiretap Act, Mo. Stat. § 542.400 *et seq.*; the Massachusetts Wiretap Statute, Mass. Gen. Laws Ann. 272 § 99; and the Maryland Wiretap Act, Md. Cts. & Jud. Pro. § 10-401 *et seq*. Plaintiffs also assert claims at common law for intrusion upon seclusion, publication of private facts, and unjust enrichment.

**B.**     **Felix Krause Reports on Meta's Conduct; Meta Contacts Krause.**

Computer science expert Felix Krause reported on Meta's circumvention of user privacy settings in two articles published on August 10 and August 18, 2022. ¶¶ 82-84. In the August 10th article Krause detailed his discovery of a piece of JavaScript code, called pcm.js, and explained the technical function of the code. He disclosed that his research had uncovered that "[t]he external JavaScript file the [Facebook] app injects is the [pcm.js JavaScript] which is code to build a bridge to communicate with the host app." ECF No. 58-2 at 4.[2] He confirmed that the "Facebook app actively run[s] JavaScript commands to inject an additional JavaScript SDK without the user's consent, as well as tracking the user's text selections." *Id.* at 5. Krause included images in his August 10th article depicting the results of his testing, including the injection of code by the Facebook in-app browser. *Id.* at 6-7.

After Krause published his initial article, Meta or its lawyers contacted Krause directly to respond to his claims, causing him to put disclaimers on his post and reproduce portions of Meta's correspondence with him. On August 11th and 14th Krause updated his initial post to include Meta's explanation regarding the pcm.js JavaScript and its purported relationship to users' ATT preferences. *Id.* at 13-14. Under the heading "Update 2022-08-11 (information provided by Meta)," Krause wrote, "I sent Meta a few follow-up questions" and "[i]n the mean-time, *everything published in this post is correct.*" *Id.* at 13 (emphasis added). Similarly, under the heading "Update 2022-08-14 (information provided by Meta)," Krause shared a statement from Meta regarding its purported compliance with Apple's ATT policy but added: "[w]hile that answer provides some context, I don't think it answers my question." *Id.* at 14.

Although Krause published Meta's responses and included several disclaimers, he continued to express skepticism of Meta's conduct and explanations. On August 18th Krause published a follow-up article addressing his recent discovery of the event listeners and their functionality. The second article is referenced in an "Update" to the "Technical Details" section of the August 10th article; it explains how the event listeners "subscribe[] to every tap on any button, link, image or other component on external

---

[2] Citations to page numbers in ECF No. 58-2 correspond to the numbers stamped in blue across the header by the ECF system rather than the numbers that appear at the bottom of the document.

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND REQUEST FOR JUDICIAL NOTICE
CASE NO. 4:22-cv-05267-JST

websites rendered inside the [Facebook] app" and "subscribe[] to every time the user selects a UI

element (like a text field)." *Id.* at 9.

## III. LEGAL STANDARD

A cause of action must be supported by "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

While they have done so here, Plaintiffs were not required to plead "detailed factual allegations" to state

their claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Erickson*, 551 U.S. at 93 ("Specific

facts are not necessary; the statement need only give the defendant fair notice of what the claim is and

the grounds upon which it rests.") (citations and alteration omitted). Plaintiffs need only set forth enough

facts to state claims that are facially plausible. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116,

1123 (9th Cir. 2008). "Indeed, it may appear on the face of the pleadings that recovery is very remote

and unlikely but that is not the test." *Id.* (citation omitted). The test calls for "more than a sheer

possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

omitted). The Court accepts all complaint allegations as true, considers them as a whole, and draws all

reasonable inferences in Plaintiffs' favor. *Association for L.A. Deputy Sheriffs v. County of Los Angeles*,

648 F.3d 986, 991 (9th Cir. 2011).

## IV. ARGUMENT

### A. Meta's Fact-Based Arguments Are Improper and Invert the Pleading Standard.

Electing not to contest the majority of Plaintiffs' claims, Meta asks this Court to consider three

documents submitted with its Motion to Dismiss under the doctrines of incorporation by reference and

judicial notice, and to conclude that the allegations regarding its monitoring and recording of user

activities in the Facebook in-app browser are implausible.[3] Mot. at 16-22. Exhibit 1 is an updated

version of Krause's August 10, 2022 post reflecting Meta's communications with him. ECF No. 58-2.

Exhibit 2 is a March 3, 2018 post from Krause discussing his research on Facebook's in-app browser

software. ECF No. 58-3. Exhibit 3 is a page from Apple's website discussing its ATT policy. ECF No.

58-4. Meta largely relies on Krause's August 10th post to challenge the allegations in the Complaint.

---

[3] Meta raises separate challenges only to Plaintiffs' claims for violations of the CFAA and the UCL and
for equitable relief. ECF Nos. 22–27.

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND REQUEST FOR JUDICIAL NOTICE
CASE NO. 4:22-cv-05267-JST

While Plaintiffs cite this reporting as support for their allegations, they separately conducted an independent months-long investigation in support of the allegations in their Consolidated Class Action Complaint (ECF No. 36) and are continuing that investigation. Krause's reporting is one source of support for Plaintiffs' claims but not the sole basis for their allegations. The disclaimers Krause added to his August 10th post following Meta's communications with him give no insight into the facts learned in Plaintiffs' own investigation. Meta therefore invites error in equating Krause's updated August 10th post with the allegations in the Complaint. In any case, as discussed below, Meta's insistence that the August 10th post "contradicts" the Complaint fails to withstand scrutiny when the selective excerpts cited by Meta are examined in context.

Moreover, neither the doctrines of incorporation by reference nor judicial notice permit Meta to use the factual statements contained in any of these documents to interpose its preferred version of events to dispute the allegations. This is not a motion for summary judgment and there is a "prohibition against resolving factual disputes at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018); *Brady v. Delta Energy & Commc'ns, Inc.*, 2023 WL 2683203, at *9 (C.D. Cal. Jan. 25, 2023) (fact disputes are "inappropriate to resolve on a motion to dismiss."). Meta's request that the Court consider factual assertions in Krause's posts and draw inferences against Plaintiffs, based on disclaimers and revisions that Krause added *after* Meta contacted him, is at odds with the established pleading standard, and should be rejected. *See, e.g.*, *Zeller v. Optavia, LLC*, 2022 WL 17858032, at *3 (S.D. Cal. Dec. 22, 2022) (declining invitation to review a website to disprove the plaintiff's claims as doing so would convert the motion to dismiss into a motion for summary judgment). Instead, "hotly disputed facts . . . are more appropriately resolved on summary judgment" with a developed record. *Pollock v. Fed. Ins. Co.*, 2022 WL 912893, at *6 (N.D. Cal. Mar. 29, 2022); *see Royal 4 Sys., Inc. v. RLI Ins. Co.*, 2022 WL 19263327, at *4 (C.D. Cal. Dec. 9, 2022) (rejecting request to consider contents of email to refute the allegations).

### 1. Meta's Exhibits Are Neither Incorporated by Reference Nor Subject to Judicial Notice.

Generally, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja*, 899

6

F.3d at 998. There are two relevant exceptions: courts may consider a document on a motion to dismiss under the judicially created "incorporation-by-reference" doctrine, or it may take judicial notice under Federal Rule of Evidence 201(b) of matters not subject to reasonable dispute. *Khoja*, 899 F.3d at 998. These exceptions are narrowly applied—the Ninth Circuit has cautioned that "[t]he overuse and improper application of judicial notice and the incorporation-by-reference doctrine . . . can lead to unintended and harmful results." *Id.* Courts thus preclude defendants from using these doctrines to contest well-pled allegations at the pleading stage. *See id.* at 998-99 ("If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief.").

Although Meta argues in its Request for Judicial Notice that it is not seeking to introduce its exhibits for the truth of their contents, but "simply of the fact that the webpages contain certain statements" (ECF No. 59 at 4), it admits in its Motion to Dismiss (ECF No. 58 at 16) that it is using these documents for the purpose the Ninth Circuit condemned: to challenge Plaintiffs' factual allegations with its own version of events. *Khoja*, 899 F.3d at 1003 (". . . improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.").

a.   **The Incorporation by Reference Doctrine Does Not Permit Meta to Introduce a Self-Serving Version of the Facts.**

Meta maintains that the Court may consider the factual assertions contained in Exhibit 1 (but not the other exhibits) because it is incorporated by reference into Plaintiffs' Complaint. RJN at 4. But Meta's request ignores that the version it relies on is a later version of the blog that was edited after Meta contacted the author. The attached copy of the post states it was updated on August 11 and August 14, 2022. ECF No. 58-2, at 4, 13-14. These updates reveal that Meta influenced many portions of Exhibit 1 that it invokes to support its argument, as Krause added disclaimers in response to Meta's outreach. For example, the updated post states: "After the publication went live, Meta has sent two emails clarifying what is happening on their end. I addressed their comments, the following has changed: *According to Meta*, the script injected (pcm.js) helps Meta respect the user's ATT opt out

7

choice." *Id.* at 13 (emphasis added). Exhibit 1 accordingly reflects Meta's version of the facts and explanation for its conduct, as opposed to being Krause's statement of the facts or the basis for Plaintiffs' claims.

In addition, Meta seeks to introduce the statements contained in the updated August 10th post *only* to contest the facts alleged in the Complaint. Such a use of the incorporation-by-reference doctrine is improper. *See, e.g.*, *Molica v. Synchrony Bank*, 2021 WL 9315272, at *2 (N.D. Cal. Sept. 14, 2021) (Tigar, J.) (declining to incorporate documents by reference out of concern about attempt to defeat well-pled allegations); *see also Khoja*, 899 F.3d at 1002; *Sgro v. Danone Waters of N. Am. Inc.*, 532 F.3d 940, 943 n.1 (9th Cir. 2008) (refusing to interpret incorporated disability plan documents to contradict plaintiff's factual allegations); *AliveCor, Inc. v. Apple Inc.*, 592 F. Supp. 904, 913 (N.D. Cal. 2022) (incorporating documents cited by the plaintiff but refusing to "interpret the incorporated documents to contradict well-pled factual allegations in the complaint").

Plaintiffs' Complaint details the mechanisms by which Meta secretly intercepts their communications through use of the Facebook in-app browser. The Krause post—including the disclaimers added after Meta contacted the author—cannot be used to adjudicate the truth of these allegations. Following *Khoja*, courts have repeatedly held that the truth of an article's contents may not be resolved on a motion to dismiss through incorporation by reference. *See, e.g.*, *Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1039 (C.D. Cal. 2022) (although web page was incorporated by reference, the court would not "weigh[] the evidentiary persuasiveness of the statements"); *Michelle v. California Dep't of Corr. & Rehab.*, 2021 WL 1516401, at *5 (E.D. Cal. Apr. 16, 2021) (even if reports were incorporated by reference, the court would not consider the factual assertions contained in them); *DalPoggetto v. Wirecard AG*, 2020 WL 2374948, at *1 (C.D. Cal. Apr. 15, 2020) (incorporation by reference could not be used to rebut the well-pled allegations in a complaint); *Geary v. Parexel Int'l Corp.*, No. 5:19-CV-07322 EJD, 2023 WL 2576836, at *4 (N.D. Cal. Mar. 20, 2023) (finding it "improper on a 12(b)(6) motion to dismiss" to use doctrine to "challenge the truth" of the allegations); *Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1108 (S.D. Cal. 2021) (similar).

The same reasoning applies here. *See Kip's Nut-Free Kitchen, LLC v. Kips Dehydrated Foods, LLC*, 2019 WL 3766654, at *3 (S.D. Cal. Aug. 9, 2019) ("The Court has no information about when the

8

blog post was written, what the author's motivations were, or any other critical facts that would be necessary to determine whether the contents of the blog post have evidentiary significance to this case."); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *4 (N.D. Cal. Apr. 6, 2023) ("[J]udicially noticing all of the information contained on Oracle's own webpages is improper and unnecessary, as it would serve no purpose other than exactly what the Ninth Circuit warned against: crafting an alternative version of events. For the same reasons, Defendant's request to incorporate the documents by reference is denied.").

> **b.    The Contents of Meta's Exhibits Cannot Be Judicially Noticed Because They Are Subject to Reasonable Dispute.**

Similarly, a court "may not judicially notice a fact that is subject to reasonable dispute" particularly when it goes to "the heart of the dispute in this action." *Bushy v. Green*, 2022 WL 2442739, at *1 (C.D. Cal. Apr. 6, 2022). Therefore, the Court should decline Meta's invitation to take judicial notice "to resolve disputed factual issues[.]" *Baron v. Hyrecar Inc.*, 2022 WL 17413562, at *5 (C.D. Cal. Dec. 5, 2022). While the Court may take judicial notice of the existence of these documents, this of course does not extend to the statements of fact contained within them. *See Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1087 n.2 (9th Cir. 2018) ("We take notice of the fact of publication, but do not assume the truth of the article's contents.").

Meta urges the Court to take judicial notice of all three exhibits because they are "webpages publicly available online" and so are "not subject to reasonable dispute." RJN at 4. But it is the *existence* of the web pages that is not subject to dispute. As this Court has held, simply because a website is publicly available does not mean its *contents* are beyond dispute and a proper subject of judicial notice. *See Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018) ("[T]his Court rejects the notion that a document is judicially noticeable simply because it appears on a publicly available website, regardless of who maintains the website or the purpose of the document); *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1040 (N.D. Cal. 2021). The Ninth Circuit likewise advised "[i]t is improper to judicially notice a [document] when the substance of the [document] is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes." *Khoja*, 899 F.3d at 1000; *see also In re Yahoo! Inc. Consumer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1128 (N.D.

9

1   Cal. 2018) ("[T]o the extent any facts in documents subject to judicial notice are subject to reasonable
2   dispute, the Court will not take judicial notice of those facts."); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461,
3   477 (N.D. Cal. 2021) (similar).

4          As with its incorporation argument, Meta seeks to challenge Plaintiffs' allegations through the
5   judicial notice request. For example, Meta asks the Court to consider the factual statements contained in
6   Exhibit 3, in conjunction with Exhibit 1, to prove at the pleading stage that Meta in fact did not
7   "circumvent Apple's ATT policy" (Mot. at 11), contrary to Plaintiffs' well-pled allegations. This Court
8   has declined to take judicial notice when, as here, parties seek to "do what *Khoja* forbids—ask the Court
9   to take judicial notice of documents that they then use as a basis to challenge the factual averments in
10  the complaint." *Eastman v. Apple, Inc.*, 2019 WL 3934805, at *4 (N.D. Cal. Aug. 20, 2019) (quoting
11  *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1031 (N.D. Cal. 2018)). In *Eastman*, this Court
12  declined a request to judicially notice several patents, even though the patents were in the public realm,
13  because the contents of the patents were being introduced for the express purpose of challenging the
14  allegations. *Id.* at *5. Meta makes a similar request in this case and the Court should again decline to
15  resolve disputed facts in favor of the defendant. *See also, e.g., Katz-Lacabe*, 2023 WL 2838118, at *4
16  (declining to take judicial notice of information on website "as it would serve no purpose other than
17  exactly what the Ninth Circuit warned against: crafting an alternative version of events"); *Baird v.
18  Samsung Elecs. Am., Inc.*, 522 F. Supp. 3d 679, 684 (N.D. Cal. 2021) (rejecting judicial notice of
19  documents where their "import" was disputed).

20          Meta's cases offer no support for its argument that the Court may take judicial notice of the
21  contents of websites just because they are in the public domain. The courts in those cases took judicial
22  notice only for the limited purpose of establishing what was publicly available at a certain time or only
23  for the document's existence. *See Makaeff v. Trump Univ., LLC*, 715 F.3 254, 259 n.2 (9th Cir. 2013) (in
24  defamation case, taking judicial notice of various publications to rule on whether it was a public or
25  limited public figure at the time of the allegedly defamatory statements); *Brown v. Google LLC*, 525 F.
26  Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of versions of Google's privacy policies in
27  the public realm on dates relevant to the facts); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d
28  797, 813 (N.D. Cal. 2020) (judicial notice of news report and Google blog post only proper as to the fact

10

1    that they were published—"[i]t is well-established that '[c]ourts may take judicial notice of publications
2    introduced to indicate what was in the public realm at the time'"); *Pac. Overland, LLC v. Kauai*
3    *Overlander*, 2018 WL 3821070, at *2 (N.D. Cal. Aug. 10, 2018) (in motion to dismiss for lack of
4    personal jurisdiction, taking judicial notice of defendant's website, printouts from Instagram account,
5    and Google reviews for defendant for their existence but not their contents). Unlike in those cases,
6    Meta's request improperly extends to the contested facts on web pages and should be denied.

7                 **2.        Krause's Reporting Does Not Contradict Plaintiffs' Allegations.**

8                 Even assuming any of Meta's Exhibits are incorporated by reference or subject to judicial
9    notice—they are not—the Court should reject Meta's attempt to litigate their merits. Meta contests two
10   "core" allegations in its motion: (1) that it monitors and records actions Facebook users take in the in-
11   app browser and (2) that it does so in order to circumvent Apple's ATT policy. Mot. at 18. Meta accuses
12   Plaintiffs of ignoring contrary portions of Krause's August 10th post (*id.* at 8), arguing that it only seeks
13   to limit Plaintiffs to the "limitations of what [the Krause post] says." *Id.* at 13. Yet the "limitations"
14   Meta focuses on result from its own direct intervention with Krause after he published his findings, and
15   the self-serving explanations Meta offered Krause are disputed in this litigation. In fact, even after Meta
16   contacted him Krause *never withdrew his findings*. As the updated August 10th post does not refute
17   Plaintiffs' allegations, Meta's exhibits are not grounds for dismissal. *See Produce Pay, Inc. v. Izguerra*
18   *Produce, Inc.*, 39 F.4th 1158, 1166 (9th Cir. 2022) (even if some portions of attached exhibits supported
19   a competing interpretation, dismissal was unwarranted because the documents did not "uniformly or
20   directly contradict" the allegations).

21                 **a.        Krause Never Disavowed His Findings Regarding Meta's Tracking.**

22                 Contrary to what Meta claims, at no point in the updated August 10th post does Krause
23   "disavow" that Meta monitors and records user actions taken in the in-app browser. Mot. at 8, 10, 11.
24   For support, Meta relies on statements in which Krause acknowledges the limits of his visibility into
25   Meta's activities and the data it collects. Mot. at 10-12, 19. But Krause's admission that he lacks a
26   complete understanding of Meta and the Facebook in-app browser does not mean he disagrees with
27   Plaintiffs' allegations; instead, Plaintiffs' independent investigation revealed facts beyond those
28   uncovered by Krause. As his post itself explains: "[o]verall, the goal of this project wasn't to get a list of

11

data that is sent back, but to highlight the privacy & security issues that are caused by the use of in-app browsers, as well as to **prove that apps like [Facebook] are already exploiting this loophole**."[4] ECF No. 58-2 at 5 (emphasis in original). Furthermore, regardless of the disclaimers Krause added, his updated blog post continued to criticize the use of custom in-app browsers because they are prone to exploitation. Such critiques are entirely consistent with Plaintiffs' allegations. And Krause reiterated these same concerns in his August 18th post concerning the potential privacy and security risks posed by Meta injecting code into third-party websites via the Facebook app.[5] In short, because Krause's updated August 10th post does not directly contradict Plaintiffs' allegations, Meta's reliance on it is misplaced. *See Produce Pay*, 39 F.4th at 1166.

While it accuses Plaintiffs of trying "to invent their own facts" (Mot. at 20) Meta itself presents an incomplete, misleading picture of Krause's updated August 10th post. Meta frames discrete statements from the post as contradicting the Complaint's allegations, but the context of each statement reveals that Meta's characterization is incorrect. For example, Meta quotes language from Krause to the effect that, "*[e]ven though the injected script doesn't currently do this*, running custom scripts on third party websites allows them to monitor all user interactions, like every button & link tapped, text selections, screenshots, as well as any form inputs, like passwords, addresses and credit card numbers." *Id.* at 19 (emphasis added). Meta claims this quote undermines the allegations in paragraph 89 of the Complaint and accuses Plaintiffs of purposely ignoring Krause's "repudiation" of these allegations. *Id.* at 10. Yet, Meta omits the first sentence of the passage, which includes a hyperlink to the "injected script." Clicking the hyperlink reveals that the "injected script" refers to the pcm.js JavaScript code. Thus, the language quoted from the August 10th post refers to the capabilities and functionality of the pcm.js JavaScript in isolation. By contrast, Plaintiffs' allegations in paragraph 89 concern *event listeners*, which were the subject of the subsequent August 18th post, which Meta does not dispute. As

---

[4] As Meta notes (Mot. at 10 n.4), Krause explained that while he analyzed both the Instagram and Facebook apps, he used "Instagram" throughout "[t]o keep this post simple[.]" ECF No. 58-2 at 2.

[5] https://krausefx.com/blog/announcing-inappbrowsercom-see-what-javascript-commands-get-executed-in-an-in-app-browser (last visited Apr. 26, 2023).

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND REQUEST FOR JUDICIAL NOTICE
CASE NO. 4:22-cv-05267-JST

such, dipping even slightly below Meta's selective quotation makes clear that the language quotes by Meta does *not* contradict the allegations in paragraph 89.

Meta also attempts to bolster its argument by simply adding language to Plaintiffs' allegations to suggest event listeners are the "injected script" referenced in the August 10th post. Mot. at 19 (adding "[*i.e.*, injected JavaScript]" to paragraph 89 of the Complaint). But that insertion is belied by Meta's own recitation of the facts, which notes that "[b]esides the 'pcm.js' code, Krause also states that he identified 'additional' JavaScript code related to 'tracking the user's text selections'[.]" Mot. at 12. The pcm.js JavaScript and the event listeners are distinct sets of software code: Meta's attempt to equate the two is not a faithful interpretation of either Plaintiffs' allegations or Krause's reporting.

Meta's other efforts to show that Krause would disagree with Plaintiffs' allegations also collapse upon scrutiny. Meta cites a snippet of the updated August 10th post in which Krause states he "didn't prove the exact data [Facebook] is tracking, but wanted to showcase the kind of data they could get without you knowing." Mot. at 11-12, 19. That Krause may not have proven what data Meta extracts through its in-app browser scarcely proves no user data is extracted or that user tracking is not possible. In fact, Krause's use of "could" reflects his view that unauthorized tracking is plausible. Mot. at 12. Meta also cites his statement that he does not "have a list of precise data [Facebook] sends back home" to imply he equivocates on the technical details of his findings. *Id*. Yet in the immediately preceding sentence, Krause wrote, "I do have proof that the . . . Facebook app actively run[s] JavaScript commands to inject an additional JavaScript SDK without the user's consent, as well as tracking the user's text selections." ECF No. 58-2 at 4. Meta's argument omits that statement.

**b.   Krause Did Not Find That Meta Complies with Apple's ATT Policy.**

Meta further claims that Plaintiffs' allegations regarding Apple's ATT policy are "specifically contradicted by the Krause Post" because he "specifically clarifies" that Meta does not use its JavaScript to circumvent ATT. Mot. at 12-13, 20. But, in the context of Krause's updated August 10th post, the statement Meta cites is merely Krause relaying Meta's own claim that it follows ATT rules. Meta attempts to attribute these statements to Krause by claiming he "acknowledges, without disputing" them (*id.*)—but even that would not make the statements accurate or beyond reasonable dispute, nor does it somehow make Plaintiffs' allegations "implausible."

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND REQUEST FOR JUDICIAL NOTICE
CASE NO. 4:22-cv-05267-JST

Meta also quotes a statement in which Krause wrote that "Meta is following the ATT (App Tracking Transparency) rules" (Mot. at 19-20), but Meta again leaves out a material portion of the post: a parenthetical in the sentence that further states "(as added as a note at the bottom of the article)." Examining the note at the bottom reveals that the language Meta quotes is a reference to statements that Meta itself provided. ECF No. 58-2 at 13 (August 11, 2022 update noting that Meta emailed in response to his reporting and "*[a]ccording to Meta*, the script injected (pcm.js) helps Meta respect the user's ATT opt out choice" but continuing to stress that "everything published in this post is correct") (emphasis added). That Krause was relaying Meta's response is apparent; even in the updated version of the August 10th post, he expressed doubt about Meta's explanations and its insistence that it adheres to Apple's ATT policy. *See id.* at 13-14 (August 14 update stating that in response to a follow-up question from Krause, Meta asserted that the code "is required to respect a user's ATT decision," but adding: "I don't think it answers my question."). Hence, Krause himself did not conclude that Meta honors users' ATT preferences. In the same paragraph Meta relies on, Krause wrote that "[t]he message of this article is about how the [Facebook] app actively injects and executes JavaScript code on third party websites, using their in-app browser. This article does not talk about the legal aspect of things, but *the technical implementation of what is happening*, and what is possible on a technical level." *Id.* at 4 (emphasis added).

Because Krause never concluded that Meta complies with Apple's ATT policy and because nothing in the updated August 10th post contradicts any of Plaintiffs' allegations of fact, Plaintiffs' well-pled allegations must be accepted as true for present purposes. *Produce Pay*, 39 F.4th at 1166.

        **c.**    **Plaintiffs' Tracking Allegations Are Plausible and Adequately Supported.**

Meta argues that once the "contradicted allegations" are removed, Plaintiffs at most allege a "generalized concern" that its in-app browser could be used to monitor users' activities and that the mere possibility of this conduct is insufficient to confer Article III standing or to state a plausible claim for relief. Mot. at 21-22. But Meta's excessive focus on Krause's reporting is a tacit acknowledgement that Plaintiffs' Complaint is well pleaded. Setting aside that Meta has not shown Plaintiffs' allegations are undermined by the Krause article, Meta's argument ignores that Plaintiffs unequivocally allege that Meta *does* monitor its users' activities on the Facebook app. Plaintiffs "don't need to prove their claims at such an early stage." *Derr v. Ra Med. Sys., Inc.*, 2021 WL 1117309, at *2 (S.D. Cal. Mar. 24, 2021);

14

see *Loh v. Future Motion, Inc.*, 2022 WL 2668380, at *3 (N.D. Cal. July 11, 2022) ("The purpose of a motion to dismiss is to test the legal sufficiency of the complaint; not to decide its factual merits.").

Plausibility does not mean probability and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks and citation omitted). Here, the Complaint establishes more than a "mere possibility of improper conduct" or "mere possibility of harm." Mot. at 21. Plaintiffs detail the motivation for Meta's alleged conduct: the threat to Meta's business model from Apple's announcement in late 2020 that it was changing iOS device settings to provide greater privacy protections to consumers and give them more control over their data. ¶¶ 56-80. Moreover, Plaintiffs detail the injection of software code into the in-app browser for the purpose of collecting user data from third-party websites (¶¶ 86, 90-93, 95-96) and identify the concrete harms Plaintiffs suffered due to Meta's practices (¶¶ 13-52, 97-101). Unlike the plaintiffs in *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1188 (N.D. Cal. 2020), who alleged facts based only "on information or belief" and "hedg[ed] on whether Facebook actually does what [the plaintiff] accuses," Plaintiffs clearly and unequivocally allege based on specific facts that the Facebook in-app browser injects code into third-party websites to intercept their communications (¶¶ 81-86). This is sufficient to state a plausible claim for relief.

Far from undermining the allegations, Krause's posts confirm that Plaintiffs' allegations are plausible. Meta concedes as much with the argument that "Krause expresses concern that a custom in-app browser *could* be used by an app developer" in the manner Plaintiffs allege. Mot. at 18-19 (emphasis in original). Meta also cites a much earlier Krause post from March 2018 in which he wrote that a custom in-app browser *can* be used to inject JavaScript code to make data accessible to the app. Mot. at 10 (citing Ex. 2). That Krause added disclaimers to his August 10th post in response to Meta's outreach does not mean that Plaintiffs' allegations are implausible. Krause never retracted his findings that Meta's in-app browser injects code into third-party websites that can be used to track users' activities on those websites, nor did he state affirmatively that Meta does not track.[6] As the Ninth Circuit

---

[6] In fact, Krause stated: "As shown in the past, if it's possible for a company to get access to data legally and for free, without asking the user for permission, *they will track it*." ECF No. 58-2 at 4 (emphasis added).

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND REQUEST FOR JUDICIAL NOTICE
CASE NO. 4:22-cv-05267-JST

1   recently held, even if an exhibit may offer some support for the defendant's competing interpretation,

2   the complaint cannot be dismissed so long as the documents "do not uniformly or directly contradict [the

3   plaintiff's] allegations." *Produce Pay*, 39 F.4th at 1166. Meta insists that its alternative interpretation of

4   Krause's August 10th post is the only plausible explanation for the conduct alleged, but Plaintiffs are

5   entitled to all reasonable inferences at this stage. *See Rosenbloom v. Pyott*, 765 F.3d 1137, 1159 (9th Cir.

6   2014) (district court erred by "declining to draw inferences to which Plaintiffs are entitled").

7       Because the updated August 10th post does not directly contradict the facts alleged in the

8   Complaint, the cases Meta relies on do not support its attempt to re-write the Complaint and resolve

9   factual disputes in its favor. *See In re Finjan Holdings, Inc. Sec. Litig.*, 2021 WL 4148682, at *3 (N.D.

10  Cal. Sept. 13, 2021) (plaintiffs in securities case selectively relied on a "Recommendation Statement"

11  but other portions of the statement directly contradicted his claims regarding the sales process); *Alamilla*

12  *v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) (articles incorporated by reference

13  directly contradicted the allegations). Meta's reliance on *Lopez v. Apple*, 519 F. Supp. 3d 672 (N.D. Cal.

14  2021), does not help its argument either. The plaintiffs in *Lopez* lacked Article III standing because their

15  allegations of harm rested exclusively on a newspaper article reporting privacy harms that may not have

16  affected plaintiffs. *Id.* at 681-83. The court held that the harm was "overly speculative" and alleged only

17  in a "conclusory fashion" because the article primarily focused on Apple devices that the plaintiffs did

18  not even own and there was no suggestion the plaintiffs' private communications were intercepted. *Id.* at

19  681; *see also In re Google*, 457 F. Supp. 3d at 816 (news report did not suggest that the plaintiff's own

20  conversations were intercepted). Here, in contrast, Plaintiffs plead specific facts demonstrating Meta

21  intercepted their private communications, and Krause's reporting demonstrates that the technical aspects

22  of their claims are plausible.

23      At bottom, the diverging conclusions the parties have drawn from Krause's August 10th article

24  underscore the need for a developed record. Plaintiffs' allegations raise many questions of fact not

25  susceptible to resolution on a motion to dismiss. *See Johnson v. In Suk Jun*, 2020 WL 709307, at *1

26  (N.D. Cal. Feb. 12, 2020) ("Defendants' motion merely challenges the factual allegations in the

27  Complaint, which is improper at this stage."); *Smith v. City of Oakland*, 612 F. Supp. 3d 951, 963 (N.D.

28  Cal. 2020) ("Whether the allegations are factually true must await a later stage of the proceedings.");

*AliveCor, Inc. v. Apple Inc.*, 592 F. Supp. 3d 904, 918 (N.D. Cal. 2022) (finding that "[defendant's] arguments effectively challenge the interpretation of evidence presented by [plaintiff]" and taking Plaintiff's allegations as true"). A "complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis in original). As a result, Meta's factual challenge based on Krause's August 10th post and other extraneous documents should be denied.

## B.      Plaintiffs State a Claim of CFAA Violations.

Together with their federal and state wiretap claims—which Meta does not contest, other than through its Krause arguments addressed above—Plaintiffs assert a claim against Meta for exceeding its authorized access to their devices in violation of the Computer Fraud and Abuse Act. ¶¶ 140-41 (citing 18 U.S.C. § 1030(a)(2)). The CFAA "prohibits acts of computer trespass" like those at issue "by those who are not authorized users or who exceed authorized use." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1065 (9th Cir. 2016). By choosing not to be tracked on their iPhones, Plaintiffs denied Meta the authority to access any part of their device for the purpose of tracking their activity on third-party websites. Meta nevertheless obtained and transmitted that information from Plaintiffs' devices. ¶¶ 66-74, 95-96, 141-142.

Meta argues that the CFAA was enacted to prohibit computer hacking and it could not have hacked Plaintiffs' devices because they voluntarily downloaded the Facebook app. Mot. at 22-23. Meta contends that it "cannot be said to have hacked into its own app" (Mot. at 16:1)—yet Meta does not own Plaintiffs' devices. Setting aside that Plaintiffs' information was taken after they withheld their consent, Meta's argument is inapposite because Plaintiffs do not base their CFAA claim on Meta accessing their device without authorization. They instead sue Meta for *exceeding* the limited access it was permitted, conduct that facially violates the "exceeds authorized access" prohibition of Section 1030(a)(2). Meta's own authority recognizes the validity of such a claim—the court in *In re iPhone Application Litigation* stated that "Apple arguably exceeded its authority when it continued to collect geolocation data from Plaintiffs after Plaintiffs had switched the Location Services setting to 'off'[.]" 844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012).

Meta, citing *Van Buren v. United States*, 141 S. Ct. 1648, 1658–59 (2021), claims that the CFAA's bar on exceeding authorized access to a computer is not implicated by its "misuse" of access, and instead requires affirmative "hacking." Mot. at 23. But Meta misreads *Van Buren*, which holds that a defendant "'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are *off limits* to him." *Van Buren*, 141 S. Ct. at 1662 (emphasis added). Meta's conduct cannot be compared to the police officer in *Van Buren* who took a bribe to look up a license plate in a law enforcement database to which he already had access. *Id*. at 1653. Unlike the database that was available to that defendant, Plaintiffs' activities on third-party websites were off limits to Meta by their own clear directive.

Applying *Van Buren* in *hiQ Labs, Inc. v. LinkedIn Corporation*, the Ninth Circuit acknowledged that a user can "shut the gate" and withhold access to portions of their computer activity via "code" or "contracts or policies." 31 F.4th 1180, 1198 (9th Cir. 2022) (citing *Van Buren*, 141 S. Ct. at 1659 n.8). That is exactly what Plaintiffs did: By turning off third-party tracking under Apple's ATT framework, Plaintiffs enabled "code-based" limitations that expressly *denied* Meta's authority to track their browsing activity across third-party websites. ¶¶ 66-74, 95-96, 101. By nonetheless collecting and transmitting that very information, Meta accessed portions of Plaintiffs' iPhones that they had designated "off limits," *Van Buren*, 141 S. Ct. at 1662, contrary to Section 1030(a)(2). *See, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1063-67 (9th Cir. 2016) (holding that Facebook stated a CFAA claim against a data aggregator where Facebook's cease-and-desist letter revoked consent to access the platform, after which the aggregator nonetheless circumvented IP barriers); *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1171-72 (C.D. Cal. 2018) (upholding claim of CFAA violation because "[a]fter receipt of the [cease and desist letter], each time Defendants purchased tickets with a bot, they accessed the Ticketmaster website in a manner explicitly forbidden to them, thus exceeding their authorization to use the Ticketmaster website."); *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 681-82 (N.D. Cal. 2020), *aff'd*, 17 F.4th 930 (9th Cir. 2021) (concluding that "factual allegations meet the definition of exceeds authorized access because

1  defendants had permission to access a portion of the computer in question (the WhatsApp servers) but

2  did not have permission to access other portions.").

3      Meta falls back on the argument that Plaintiffs were not actually injured under the statute. Mot.

4  at 24. The CFAA provides a private right of action to recover a loss caused by a statutory violation. *See*

5  18 U.S.C. § 1030(g). The CFAA defines "loss" as "*any* reasonable cost to any victim, including the cost

6  of responding to an offense, conducting a damage assessment, and restoring the data, program, system,

7  or information to its condition prior to the offense[.]" 18 U.S.C. § 1030(e)(11) (emphasis added). The

8  term "including" in these enumerated forms of "loss" necessarily means the list is "not exhaustive."

9  *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1173 (C.D. Cal. 2018). Meta cites

10  *Andrews v. Sirius XM Radio Inc*., 932 F.3d 1253, 1262-63 (9th Cir. 2019), where the court held that

11  statutory loss does not include lost profits from commoditizing personal information. Plaintiffs here do

12  not assert that implausible theory of loss—they could not have lost Meta's profits, which are instead

13  subject to disgorgement based on principles of unjust enrichment. ¶¶ 314, 316. Meta's CFAA violations,

14  by contrast, harmed Plaintiffs "by decreasing the value of their private and personally identifiable

15  information and communications, and by impeding their ability to control the dissemination and use of

16  such information and communications[.]" ¶ 146. *Andrews* offers dicta about Section 1030(e)(11) but

17  does not speak to these costs Plaintiffs incurred on account of Meta's intrusions.

18      Plaintiffs also specify the requisite two aggregating factors under Section 1030(g), which cross-

19  references Section 1030(c)(4)(A)(i). ¶¶ 145, 147. First, given the very large class, it is more than

20  plausible that the combined loss in this case exceeds $5,000. ¶¶ 58-59, 97-101, 145. Second, the

21  sensitive personal facts that Meta collects and discloses includes HIPPA-protected health information

22  (¶¶ 2, 4, 59, 89, 101), putting public health imperatives at risk.

23      The CFAA cause of action fits the facts of this case and should proceed.

24  **C.   Plaintiffs' Equitable Relief and UCL Claims Should Proceed.**

25      **1.   Plaintiffs Sufficiently Plead They Lack an Adequate Remedy at Law.**

26      Meta moves to dismiss Plaintiffs' equitable relief claims, arguing that they do not sufficiently

27  plead that they lack an adequate remedy at law. Mot. at 25-26 (citing *Sonner v. Premier Nutrition Corp.*,

28  971 F.3d 834, 844-45 (9th Cir. 2020)). But this Court and "the majority of courts in this district" have

1  held that *Sonner* does not require dismissal of equitable claims at the pleading stage. *See In re Natera*

2  *Prenatal Testing Litig.*, ECF No. 64 at 18; *Hrapoff v. Hisamitsu Am., Inc.*, 2022 WL 2168076, at *6

3  (N.D. Cal. June 16, 2022) (agreeing that "*Sonner* simply holds that a plaintiff must establish that she

4  lacks an adequate remedy at law before securing equitable relief—not before pleading it"); *see also, e.g.*,

5  *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *13 (N.D. Cal. Apr. 6, 2023); *Brown v. Food for*

6  *Life Baking Co.*, 2023 WL 2637407, at *7 (N.D. Cal. Feb. 28, 2023).

7       Plaintiffs allege that they lack an adequate remedy at law. ¶¶ 176, 312. No more is required

8  because it would be premature to determine the adequacy of any potential legal remedies and "discovery

9  may reveal that claims providing legal remedies are inadequate." *Edelson v. Travel Insured Int'l, Inc.*,

10  2021 WL 4334075, at *6 (S.D. Cal. Sept. 23, 2021). In other words, "there is still a question of fact as to

11  whether the legal remedies here provide adequate recovery." *Oddo v. United Techs. Corp.*, 2022 WL

12  577663, at *19 (C.D. Cal. Jan. 3, 2022). Plaintiffs' equitable relief claims should therefore be upheld.

13  *See In re Natera*, ECF No. 64 at 19 ("Plaintiffs plead that they lack an adequate remedy at law. That is

14  sufficient at this stage of the litigation.") (citations omitted); *Ablaza v. Sanofi-Aventis U.S. LLC*, 2023

15  WL 2942983, at *2 (N.D. Cal. Apr. 13, 2023).

16                **2.      Meta's Unfair Competition Caused Economic Harm to Plaintiffs.**

17       Meta also asks the Court to dismiss the UCL claim by contending Plaintiffs have not suffered an

18  economic injury giving them UCL standing. Mot. at 26-27. But Plaintiffs allege that Meta's conduct

19  reduced the value of their private, personally identifiable data and content and deprived them of their

20  property right to control the dissemination and use of their own personal information and

21  communications. ¶ 175. Multiple studies have shown that personal data has significant economic value,

22  and Meta collects Plaintiffs' and other Facebook users' information precisely because of its value: Meta

23  profits from aggregating and analyzing such data to sell targeted advertising. ¶¶ 58-60.

24       Diminution of value is a recognized type of economic injury under the UCL. *Overstock.com v.*

25  *Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 716 (2007) ("[D]iminution in value of [a plaintiff's]

26  assets and decline in its market capitalization and other vested interests" was sufficient to meet the UCL

27  injury requirement). Hence, in conflict with Meta's argument, courts in this District have held that the

28  loss of a person's private information without their consent may be a compensable economic injury. *See*

                                                                20

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("[T]he Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *see also, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at \*15 (N.D. Cal. May 27, 2016); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014).

Plaintiffs therefore have standing to sue Meta for its unfair competition in question.

## V. CONCLUSION

For the foregoing reasons, Meta's motion to dismiss should be denied. If the Court grants the motion in whole or part, Plaintiffs respectfully request leave to amend under Rule 15.

Respectfully submitted,

Dated: May 2, 2023

By: /s/ *Adam E. Polk*
Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
Kimberly Macey (SBN 342019)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
kmacey@girardsharp.com
rgaa@girardsharp.com

Gary M. Klinger (*pro hac vice*)
Alexandra M. Honeycutt (*pro hac vice*)
Alexander Wolf (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON
 PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com
ahoneycutt@milberg.com
awolf@milberg.com

*Attorneys for Plaintiffs*

21