1   LATHAM & WATKINS LLP
    Elizabeth L. Deeley (Bar No. 230798)
2     *elizabeth.deeley@lw.com*
    Sheridan Caldwell (Bar No. 324743)
3     *sheridan.caldwell@lw.com*
    505 Montgomery Street, Suite 2000
4   San Francisco, California 94111-6538
    Telephone: +1.415.391.0600
5
    Serrin Turner (*pro hac vice*)
6     *serrin.turner@lw.com*
    Marissa Alter-Nelson (*pro hac vice*)
7     *marissa.alter-nelson@lw.com*
    1271 Avenue of the Americas
8   New York, New York 10022-4834
    Telephone: +1.212.906.1200
9
10  *Attorneys for Defendant Meta Platforms, Inc.*

11              **UNITED STATES DISTRICT COURT**

12             **NORTHERN DISTRICT OF CALIFORNIA**

13                **SAN FRANCISCO DIVISION**

14

15  In re Meta Browser Tracking Litigation          Case No. 3:22-cv-05267-AMO

16
                                                    **DEFENDANT META PLATFORMS,**
17                                                  **INC.'S REPLY IN SUPPORT OF**
                                                    **MOTION TO DISMISS**
18                                                  **CONSOLIDATED CLASS ACTION**
                                                    **COMPLAINT**
19
20                                                  Date:    July 20, 2023
                                                    Time:    2:00 p.m.
21                                                  Court:   Courtroom 10—19th Floor
                                                    Judge:   Hon. Araceli Martinez-Olguin
22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

   A.   The Krause Post Is Incorporated by Reference........................................ 2

   B.   All of the Exhibits Are Judicially Noticeable ......................................... 4

   C.   The Court Should Not Credit Plaintiffs' Inaccurate Summary of
the Krause Post, and Without It Plaintiffs' Claims Lack Any
Plausible Factual Basis ........................................................................... 4

      1.   Contrary to the Characterizations in the Complaint, the
Krause Post Does Not Assert That Meta Actually Engages
in the Conduct They Allege ........................................................... 5

      2.   Without Their Mischaracterization of the Krause Post,
Plaintiffs' Allegations Are Speculative and Implausible ............. 8

   D.   Plaintiffs' CFAA Claim Fails ............................................................... 11

      1.   Plaintiffs Conflate Alleged Data Misuse with Exceeding
Authorized Access ...................................................................... 11

      2.   Plaintiffs' "Loss" Allegations Are Insufficient Under the
CFAA ......................................................................................... 13

   E.   Plaintiffs' Equitable Relief Arguments Are Contrary to Ninth
Circuit Law ........................................................................................... 13

   F.   Plaintiffs' UCL Arguments Have Been Roundly Rejected .................... 15

III.   CONCLUSION ................................................................................................. 15

**TABLE OF AUTHORITIES**

**CASES**

*Alert Enter., Inc. v. Rana*,
No. 22-CV-06646-JSC, 2023 WL 2541353 (N.D. Cal. Mar. 16, 2023).................................. 9

*AliveCor, Inc. v. Apple Inc.*,
592 F. Supp. 3d 904 (N.D. Cal. 2022) ................................................................................... 3

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) ............................................................................................. 13

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
No. 17-CV-03805-LHK, 2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ............................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................... 8

*Audrey Heredia et al v. Sunrise Senior Living LLC*,
No. 8:18-cv-01974, 2021 WL 819159 (C.D. Cal. Feb. 10, 2021) ........................................ 14

*Baron v. Hyrecar Inc.*,
No. 2:21-cv-06918-FWS, 2022 WL 17413562 (C.D. Cal. Dec. 5, 2022) .............................. 4

*Battle v. Taylor James, LLC*,
607 F. Supp. 3d 1025 (C.D. Cal. 2022) ................................................................................. 3

*Bell Atl. Corp. v. Twombly*,
540 U.S. 544 (2007).......................................................................................................... 8, 10

*Brown v. Food for Life Baking Co.*,
2023 WL 2637407 (N.D. Cal. Feb. 28, 2023) ...................................................................... 14

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ................................................................................. 4

*Coffee v. Google, LLC*
No. 20-CV-03901-BLF, 2021 WL 493387 (N.D. Cal. Feb. 10, 2021).................................. 4

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ................................................................................. 13

*Coyoy v. City of Eloy*,
859 F. App'x 96 (9th Cir. 2021) ............................................................................................ 5

*DalPoggetto v. Wirecard AG*,
No. CV 19-0986 FMO, 2020 WL 2374948 (C.D. Cal. Apr. 15, 2020).................................. 3

*Dydzak v. United States*,
   No. 17-CV-04360-EMC, 2017 WL 4922450 (N.D. Cal. Oct. 31, 2017) ............................... 9

*EVOX Prods., LLC v. Verizon Media Inc.*,
   No. CV-202852, 2021 WL 3260609 (C.D. Cal. May 5, 2021) ............................................ 10

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) .......................................................................................... 12

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) ............................................................................................ 7

*Geary v. Parexel Int'l Corp.*,
   No. 5:19-CV-07322 EJD, 2023 WL 2576836 (N.D. Cal. Mar. 20, 2023)............................... 3

*Guzman v. Polaris Industries, Inc.*,
   49 F.4th 1308 (9th Cir. 2022) .......................................................................................... 14

*Heeger v. Facebook, Inc.*,
   509 F. Supp. 3d 1182 (N.D. Cal. 2020) ............................................................................ 10

*In re Ashworth, Inc. Sec. Litig.*,
   No. 99-CV-0121, 2000 WL 33176041 (S.D. Cal. July 18, 2000) ........................................ 10

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
   No. 20-cv-03131-JSC, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021).................................. 14

*In re iPhone Application Litig*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................ 11

*In Re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
   No. 16-CV-06391-BLF, 2020 WL 7664461 (N.D. Cal. Dec. 24, 2020) ................................. 7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   313 F. Supp. 3d 1113 (N.D. Cal. 2018) ............................................................................... 4

*InfoStream Grp., Inc. v. PayPal, Inc.*,
   No. C 12-748 SI, 2012 WL 3731517 (N.D. Cal. Aug. 28, 2012) .......................................... 9

*Johnson v. In Suk Jun*,
   No. 19-cv-06474-BLF, 2020 WL 709307 (N.D. Cal. Feb. 12, 2020) ..................................... 7

*Katz-Lacabe v. Oracle Am. Inc.*,
   No. 22-cv-04792-RS, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023).............................. 14, 15

*Ketayi v. Health Enrollment Grp.*,
   516 F. Supp. 3d 1092 (S.D. Cal. 2021)............................................................................... 3

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ...................................................................................... 2, 3, 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANT'S REPLY ISO MOT.
TO DISMISS CONS. COMPLAINT
CASE NO. 4:22-cv-05267-AMO

*Kip's Nut-Free Kitchen, LLC v. Kips Dehydrated Foods, LLC*,
    No. 3:19-cv-00290-LA, 2019 WL 3766654 (S.D. Cal. Aug. 9, 2019) ................................... 3

*Letizia v. Facebook Inc.*,
    267 F. Supp. 3d 1235 (N.D. Cal. 2017) ................................................................................ 4

*Lopez v. Apple, Inc.*,
    519 F. Supp. 3d 672 (N.D. Cal. 2021) .................................................................................. 7

*M.L.A. v. Maisels*,
    No. 21-CV-08121-VKD, 2022 WL 1489473 (N.D. Cal. May 11, 2022) ............................... 7

*Matilock, Inc. v. Pouladdej*,
    No. 20-cv-01186-HSG, 2020 WL 3187198 (N.D. Cal. Jun. 15, 2020) ................................. 10

*Michelle v. California Dep't of Corr. & Rehab.*,
    No. 1:18-cv-01743, 2021 WL 1516401 (E.D. Cal. Apr. 16, 2021) ........................................ 3

*Molica v. Synchrony Bank*,
    No. 21-cv-01549-JST, 2021 WL 9315272 (N.D. Cal. Sept. 14, 2021) .................................. 3

*Moore v. Centrelake Medical Group*,
    83 Cal. App. 5th 515 (2022) ................................................................................................ 15

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*,
    899 F.3d 1081 (9th Cir. 2018) .............................................................................................. 4

*People.ai, Inc. v. SetSail Techs., Inc.*,
    No. C-20-09148-WHA, 2021 WL 2333880 (N.D. Cal. June 8, 2021) ................................... 9

*Produce Pay, Inc. v. Izguerra Produce, Inc.*,
    39 F.4th 1158 (9th Cir. 2022) .............................................................................................. 7

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021) ........................................................................................ 15

*Rollins v. Dignity Health*,
    338 F. Supp. 3d 1025 (N.D. Cal. 2018) ................................................................................ 4

*Sgro v. Danone Waters of N. Am. Inc.*,
    532 F.3d 940 (9th Cir. 2008) ............................................................................................... 3

*Smith v. Apple, Inc.*,
    No. 21-CV-09527-HSG, 2023 WL 2095914 (N.D. Cal. Feb. 17, 2023) ............................... 14

*Smith v. City of Oakland*,
    612 F. Supp. 3d 951 (N.D. Cal. 2020) ................................................................................. 7

*Sonner v. Premier Nutrition, Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................................. 13, 14, 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANT'S REPLY ISO MOT.
TO DISMISS CONS. COMPLAINT
CASE NO. 4:22-cv-05267-AMO

*Stafford v. Rite Aid Corp.*,
No. 17-CV-1340 TWR, 2023 WL 2876109 (S.D. Cal. Apr. 10, 2023)................................. 13

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) .................................................................................. 12

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) .................................................................................................. 12

*Van Buren v. United States*,
141 S. Ct. 1648 (2021)...................................................................................................... 11, 12

*Webb v. Trader Joe's Co.*,
999 F.3d 1196 (9th Cir. 2021) ................................................................................................ 10

*WhatsApp, Inc. v. NSO Group Technologies Ltd.*,
472 F. Supp. 3d 649 (N.D. Cal. 2020) ................................................................................... 13

**STATUTES**

18 U.S.C. § 1030(c)(4)(A)(i) ......................................................................................................... 13

18 U.S.C. § 1030(e)(11).................................................................................................................. 13

18 U.S.C. § 1030(g) ....................................................................................................................... 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEFENDANT'S REPLY ISO MOT.
TO DISMISS CONS. COMPLAINT
CASE NO. 4:22-cv-05267-AMO

## I.     INTRODUCTION

This case rests on nothing more than sheer speculation layered atop a mischaracterized blog post—not on any well-pled facts. Plaintiffs' Opposition only confirms that. As Plaintiffs effectively concede, the Krause Post specifically disclaims any allegation that Meta monitors and records everything users do in the In-App Browser or violates the ATT policy; rather, it merely purports to describe what app developers like Meta *could theoretically do* through the use of in-app browsers. Yet Plaintiffs' Complaint transforms this hypothetical concern into a conclusory allegation about *what Meta is actually doing*—without any substantive factual allegations to support this core accusation.

The incorporation by reference doctrine exists to address this precise situation—to prevent Plaintiffs from selectively relying on portions of an incorporated document, while ignoring other parts of that same document that contradict their allegations and defeat pleaded claims. This is why Meta offers the Krause Post—not to dispute the facts, but rather to dispute Plaintiffs' inaccurate portrayal of what it says.  Plaintiffs offer no valid reason for the Court not to consider the Krause Post in full, which the Complaint plainly refers to and relies on. When Plaintiffs' mischaracterizations of the Krause Post are stripped away, it becomes clear that Plaintiffs' claims lack any plausible basis. Their own supposition—or their vague reference to an unpled "investigation," which amounts to the same thing—is no substitute. The very purpose of the plausibility standard is to prevent a plaintiff from pursuing a fishing expedition through such speculative or threadbare pleading.

The Opposition also fails to persuasively address the additional flaws in Plaintiffs' CFAA and equitable claims. They continue to conflate alleged misuse of data with unauthorized access to part of a device and have no answer to the commonsense argument that Meta cannot be alleged to have hacked its own app. And their attempts to prop up their equitable claims rest on arguments that courts have widely rejected.

For all of these reasons, the Complaint should be dismissed in its entirety.

## II.    ARGUMENT

### A.    The Krause Post Is Incorporated by Reference

Plaintiffs argue that the Krause Post should not be incorporated by reference because (1) the blog post was "edited" or "updated" based on information Krause received from Meta about the In-App Browser, and (2) "Meta seeks to introduce the statements . . . only to contest the facts alleged in the Complaint." Opp. at 7-9. The former point is irrelevant, and the latter misunderstands Meta's arguments.

The fact that Krause edited his blog post based on information from Meta has no bearing on whether the post is subject to incorporation by reference. The Krause Post existed in "updated" form at the time the Complaint was filed (and when the original *Mitchell* complaint was filed); Plaintiffs still chose to rely on it. They do not contest the authenticity of the Krause Post, or argue that they refer to a different version of the post in their Complaint. *See* Opp. at 6 (admitting reliance on the Krause Post). They also concede the Krause Post transparently identifies any information provided by Meta, which Krause obviously determined was relevant to his analysis and worth including in the post. Opp. at 7-8 (noting Krause prefaced information he received as "[a]ccording to Meta").[1]   Whether the Krause Post is incorporated by reference does not turn on whether it contains statements attributed to Meta; rather, it turns on whether "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1004-05 (9th Cir. 2018) (citation omitted). As Meta has explained, the Complaint extensively refers to and relies on the Krause Post; indeed, it is the sole factual basis asserted for Plaintiffs' claims regarding alleged data collection through the In-App Browser. *See* Mot. at 9-11; Dkt. 59 ("RJN") at 2-3. Thus, either prong of the *Khoja* test is met.

Plaintiffs' further argument that Meta seeks to use the Krause Post "*only* to contest the facts alleged in the Complaint" (Opp. at 8) (emphasis in original), ignores that the allegations in the Complaint are themselves presented as recitations of Krause's findings. *See* Mot. at 10-11. Meta

---

[1] Nor did Meta "ignore" that the Krause Post "was edited after Meta contacted the author." Opp. 7. To the contrary, Meta's opening brief repeatedly pointed out that the Krause Post "acknowledges, without disputing" explanations "received from Meta" about the In-App Browser. Dkt. 58 ("Mot.") at 5, 13.

has offered the Krause Post to show that Plaintiffs' recitations inaccurately portray what the Krause Post actually says. Meta is not seeking to use the Krause Post as evidence of what the facts in this case actually are. (Indeed, there are certainly aspects of the Krause Post that Meta would dispute.) It is entirely appropriate at this juncture for the Court to consider the Krause Post as a whole, in order to ensure that Plaintiffs are accurately characterizing the document that they proffer as the foundation for their claims. That is the rationale for the incorporation-by-reference doctrine: to "prevent[] plaintiffs from . . . omitting portions of" documents referenced in the complaint "that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. Thus, instead of considering Plaintiffs' selective representations about the post (and what it *purportedly* asserts about Meta's use of the In-App Browser), the Court can look to the entirety of the Krause Post to see what Krause *actually* says, in order to determine whether the allegations are well pled. *Id* at 998, 1002.

None of the cases that Plaintiffs cite, Opp. at 8-9, counsel a different result. The majority of the cited cases declined to incorporate documents by reference because the documents at issue were not actually referenced or relied upon in the complaint, or because their authenticity was disputed—elements that Plaintiffs do not contest here.[2] The remainder of the cited decisions *incorporated* the relevant documents and merely noted that the court would not weigh their "evidentiary persuasiveness," *Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1039 (C.D. Cal. 2022), or use them to override otherwise "well-pled factual allegations," *AliveCor, Inc. v. Apple Inc.*, 592 F. Supp. 3d 904, 913 (N.D. Cal. 2022)—neither of which Meta asks the Court to do here.

---

[2] *See Geary v. Parexel Int'l Corp.*, No. 5:19-CV-07322 EJD, 2023 WL 2576836, at *4 (N.D. Cal. Mar. 20, 2023) (document not incorporated because the "SAC does not refer to this document, nor are the contents of the document alleged in the SAC"); *Michelle v. California Dep't of Corr. & Rehab.*, No. 1:18-cv-01743, 2021 WL 1516401, at *5 (E.D. Cal. Apr. 16, 2021) (documents not incorporated because "Plaintiff's claims do not 'necessarily depend' or rely on these documents"); *Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1107 (S.D. Cal. 2021) (documents not incorporated because they were not being offered as the foundation for insurance policy at issue, only to tee up a defense); *DalPoggetto v. Wirecard AG*, No. CV 19-0986 FMO, 2020 WL 2374948, at *1 (C.D. Cal. Apr. 15, 2020) (documents not incorporated because they were not "refer[red] to extensively" and did not form the basis of plaintiff's claims); *Kip's Nut-Free Kitchen, LLC v. Kips Dehydrated Foods, LLC*, No. 3:19-cv-00290-LA, 2019 WL 3766654, at *2 (S.D. Cal. Aug. 9, 2019) (document not incorporated or judicially noticed because it was not referred to in the complaint); *see also Sgro v. Danone Waters of N. Am. Inc.*, 532 F.3d 940, 943 n.1 (9th Cir. 2008) (documents not incorporated because plaintiffs disputed they "accurately reflect" the agreement between the parties); *Molica v. Synchrony Bank*, No. 21-cv-01549-JST, 2021 WL 9315272, at *2 (N.D. Cal. Sept. 14, 2021) (contract not incorporated because plaintiff "dispute[d] the authenticity of th[e] contract" and it was not clear it was even the relevant contract between the parties).

**B.     All of the Exhibits Are Judicially Noticeable**

The Court may also take judicial notice of the Krause Post, as well as Exhibit 2 (a March 18, 2022 blog post by Krause) and Exhibit 3 (Apple's ATT policy).[3]  These are all publicly-available documents, the existence and authenticity of which is not reasonably subject to debate. RJN at 4. Again, Meta does not seek judicial notice of these documents for the truth of any matters asserted in them. Rather, Meta attached the Krause Post so that the Court can see what Krause actually says compared to how the Complaint characterizes his assertions. Similarly, Exhibit 2 is an additional blog post by Krause that is linked in the Krause Post and that is likewise offered simply as evidence of what Krause says. As for Exhibit 3, it does not even contain any statements of fact but merely reflects what Apple's ATT policy is—which Plaintiffs do not dispute in any way (indeed, they recite it in the Complaint, *see* Compl. ¶ 4), and is an appropriate subject of judicial notice.[4]  Taking judicial notice of the Exhibits for these purposes does not involve crediting their truth, RJN at 4, and is consistent with Plaintiffs' cited cases, Opp. at 9-11.[5]

**C.     The Court Should Not Credit Plaintiffs' Inaccurate Summary of the Krause Post, and Without It Plaintiffs' Claims Lack Any Plausible Factual Basis**

As Meta previously explained, the sole alleged factual basis for Plaintiffs' core claims is a purported expert's supposed say-so: they point to the Krause Post as their basis for claiming that Meta collects everything that users do on third-party websites in the In-App Browser and that Meta uses the data for advertising purposes in violation of Apple's ATT policy. But the Krause Post

---

[3] However, while Exhibits 2 and 3 have been offered because they may be helpful for the Court to consider, they are not essential to Meta's Motion.

[4] *See, e.g., Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of online privacy policies); *Coffee v. Google*, LLC, No. 20-CV-03901-BLF, 2021 WL 493387, at *4 (N.D. Cal. Feb. 10, 2021) (taking judicial notice of online terms of use); *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1241-42 (N.D. Cal. 2017) (taking judicial notice of Facebook's Payment Terms and Self-Serve Ad Terms);

[5] *See, e.g., Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1087 n.2 (9th Cir. 2018) ("We take notice of the fact of publication, but do not assume the truth of the article's contents."); *Baron v. Hyrecar Inc.*, No. 2:21-cv-06918-FWS, 2022 WL 17413562, at *5 (C.D. Cal. Dec. 5, 2022) (declining judicial notice because exhibit only related to whether statute "was violated as a factual matter"); *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1033 (N.D. Cal. 2018) (judicially noticing relevant documents, except as to "truth of the matters asserted therein") (citation omitted); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1128 (N.D. Cal. 2018) (granting judicial notice, but noting the court will not consider disputed facts).

does not in fact say these things. To the contrary, as Plaintiffs seem to recognize at points in their Opposition, the Krause Post contains repeated "disclaimers," Opp. at 4, 6-8, 12, which make clear that he is *not* making these assertions. The Court thus "need not credit" Plaintiffs' allegations that inaccurately summarize the Krause Post, *Coyoy v. City of Eloy*, 859 F. App'x 96 (9th Cir. 2021)— and when those allegations are knocked away, there is nothing left to support their claims.

In their Opposition, Plaintiffs argue: (1) the Krause Post does not contradict their claims, and (2) even setting the Krause Post aside, their claims are plausible and "adequately supported." Neither argument withstands scrutiny or saves their claims.

1.     Contrary to the Characterizations in the Complaint, the Krause Post Does Not Assert That Meta Actually Engages in the Conduct They Allege

Plaintiffs recognize that "Krause acknowledges the limits of his visibility into Meta's activities and the data it collects" and that he added "disclaimers" to his post in response to information from Meta, Opp. at 11-12—the very disclaimers that, as Meta has explained, make clear he is *not claiming* what Plaintiffs claim. Plaintiffs nonetheless argue that the Krause Post is "consistent" with their allegations, and therefore supports them, because it contains statements about "the *potential* privacy and security risks posed by Meta injecting code" and asserts that "in-app browsers . . . are *prone* to exploitation." Opp. at 11-12 (emphasis added). These conjectural statements only underscore Meta's point: the Krause Post never asserts that Meta *actually* engages in the conduct that Plaintiffs allege. *That* is what the contradiction is: the Complaint characterizes the Krause Post as finding that the In-App Browser is actually used by Meta to engage in misconduct, when in truth the document makes no such finding. The Court therefore should not credit Plaintiffs' factual allegations in this regard—all of which are presented as a paraphrasing of the Krause Post—because they are contradicted by the very document they are sourced from. *See* Mot. at 14-15.[6]

---

[6] Plaintiffs assert that "Krause's admission that he lacks a complete understanding of Meta and the Facebook in-app browser does not mean he disagrees with Plaintiffs' allegations; instead, Plaintiffs' independent investigation revealed facts beyond those uncovered by Krause." Opp. at 11. As discussed *infra* Part II.C.2, Plaintiffs allege nothing about any independent investigation in their Complaint (the only factual basis alleged for their claims about the workings of the In-App Browser is the Krause Post, *see* Opp. at 6).

1    Plaintiffs also attempt to dismiss the disclaimers in the Krause Post as though Krause

2  himself did not make them, characterizing them as "self-serving explanations" that Meta "offered

3  Krause." Opp. at 11. But, as Meta has explained, the Krause Post acknowledges these explanations

4  and does not dispute them. Mot. at 5. In particular, Krause acknowledges, without disputing,

5  Meta's assertion that it is complying with Apple's ATT policy, and that the "pcm.js" code actually

6  "helps Meta respect the user's ATT opt out choice." Ex. 1 at 12. In light of Meta's explanations,

7  Krause unequivocally states his understanding that "Meta is following the ATT (App Tracking

8  Transparency) rules." *Id.* at 3. This is not merely Meta speaking—this is Krause conceding that he

9  is not purporting to contradict Meta's statements. And these concessions in turn make clear that

10  the Krause Post does *not* assert that Meta tracks users in violation of Apple's ATT policy,

11  notwithstanding Plaintiffs' attempt to characterize it that way in the Complaint. *E.g.*, Compl. ¶ 80.

12    Plaintiffs also try to downplay Krause's disclaimer that he is not asserting that Meta

13  collects information about everything users do in the In-App Browser, by characterizing this

14  disclaimer as relating only to the "pcm.js" script, and not to "event listeners." Opp. at 11-14. But

15  the Krause Post does not cabin its disclaimers with any such fine lines. Its "FAQs for non-tech

16  readers" section plainly states in response to the question, "Does Facebook actually steal my

17  passwords, address and credit card numbers?":  "No!  I didn't prove the exact data Instagram is

18  tracking, but wanted to showcase the kind of data they *could* get without you knowing." Ex. 1 at

19  3 (emphasis in original). There is no assertion that "event listeners" actually *do* collect this

20  information.[7] As Plaintiffs note, Krause admits that he does not know what "precise data [Meta]

21  sends back home." *Id.* at 4. Thus, the Court should not credit the Complaint's allegations

22  characterizing the Krause Post as asserting that Meta engages in sweeping data collection through

23  the In-App Browser. *See* Compl. ¶¶ 84-94 (alleging that Meta collects all information input into

24  the In-App Browser, "including passwords, addresses, and payment card numbers," while quoting

25  the Krause Post as supposedly describing "this process" and copying a diagram from the post

26

27  [7] Krause notes the presence of an "event listener" that can "track[ a] user's text selections," Opp.
   at 13, but as explained in Meta's opening brief, he does not claim to know what this code is actually
28  used for, and does not dispute Meta's explanation that the code was originally designed simply to
   "allow users to share selected text to their news feed" on Facebook. Ex. 1 at 13.

DEFENDANT'S REPLY ISO MOT.
TO DISMISS CONS. COMPLAINT
CASE NO. 3:22-cv-05267-AMO

1   supposedly showing "the systemic manner" in which it is done). In reality, the Krause Post asserts

2   no such thing.[8]

3           Because Plaintiffs' allegations are "simply not an accurate characterization" of the Krause

4   Post, they are not entitled to be credited on a motion to dismiss. *M.L.A. v. Maisels*, No. 21-CV-

5   08121-VKD, 2022 WL 1489473, at *5 (N.D. Cal. May 11, 2022) (granting motion to dismiss

6   based on incorporated document); *see also In Re Samsung Galaxy Smartphone Mktg. & Sales*

7   *Pracs. Litig.*, No. 16-CV-06391-BLF, 2020 WL 7664461, at *6 (N.D. Cal. Dec. 24, 2020)

8   (dismissing complaint because it "does not contain any allegations" other than those contradicted

9   by incorporated document). This is not, as Plaintiffs contend, an attempt to litigate "factual

10  disputes" on a motion to dismiss, Opp. at 16; the issue goes to the factual "*sufficiency* of

11  [Plaintiffs'] claim[s]," *Khoja*, 899 F.3d at 1002 (emphasis added). Unlike in the cases Plaintiffs

12  cite, the Krause Post does not introduce new information separate from the Complaint; rather, it is

13  the *alleged factual basis* for the Complaint.[9] Plaintiffs are not at liberty to point to an alleged

14  expert's findings as the factual predicate for their claims and at the same time mischaracterize what

15  those findings are. *See Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (explaining that

16  "unwarranted inferences are insufficient to defeat a motion to dismiss").[10]

---

[8] Notably, even though Plaintiffs in their Opposition attempt to recast their claims as focused on "event listeners" rather than the "pcm.js" script, the Complaint itself, relying on the Krause Post, specifically identifies the "pcm.js" script as the means through which Meta supposedly collects data from the In-App Browser for advertising purposes. *See* Compl. ¶ 86 (alleging that the "pcm.js" code "allows Meta to intercept and record users' interactions and communications with third parties, providing data that Meta analyzes," and reprinting figure from Krause Post allegedly showing this process).

[9] *Compare, e.g., Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 679 n.1, 681 (N.D. Cal. 2021) (dismissing complaint upon finding article that was "the basis of Plaintiffs' claims" did not actually support them) *with Johnson v. In Suk Jun*, No. 19-cv-06474-BLF, 2020 WL 709307, at *1 (N.D. Cal. Feb. 12, 2020) (cited Opp. at 16) (declining to consider photos of allegedly non-ADA compliant parking lot that were not part of complaint) *and Smith v. City of Oakland*, 612 F. Supp. 3d 951, 963 (N.D. Cal. 2020) (cited Opp. at 16) (regulations not at issue in complaint could not demonstrate truth or falsity of allegations).

[10] Plaintiffs contend that "the complaint cannot be dismissed so long as the documents 'do not uniformly or directly contradict [the plaintiff's] allegations.'" Opp. 16 (quoting *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1166 (9th Cir. 2022)). But, as detailed in Meta's opening brief, the Krause Post does "directly" contradict their allegations in that it specifically disavows any finding that Meta is collecting information on everything users do in the In-App Browser or that Meta is violating the ATT policy. The court in *Produce Pay* did not purport to announce any new test for the incorporation-by-reference doctrine; it merely found that, in that case, the exhibits

2.   <u>Without Their Mischaracterization of the Krause Post, Plaintiffs'
Allegations Are Speculative and Implausible</u>

Plaintiffs contend that, regardless of what the Krause Post says, "Plaintiffs unequivocally allege that Meta does monitor its users' activities on the Facebook app," and that this allegation is enough to sustain their claims. Opp. at 15. But this allegation is conclusory on its own, and absent their mischaracterization of the Krause Post, Plaintiffs fail to identify a single meaningful factual allegation that supports it. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are not presumed to be true and fail to establish a plausible basis for entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 540 U.S. 544, 557 (2007)). It does not matter if an assertion is clothed in specific terms if the plaintiff's allegations provide no basis for its truth. For example, the plaintiff in *Iqbal* made specific allegations that the defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion'"—but the Supreme Court rejected those allegations as "conclusory" because they attempted to cast legal requirements in factual terms, without pleading predicate facts to provide a plausible basis for making them. 556 U.S. at 680-81.  The same reasoning applies here: Plaintiffs cannot simply allege that Meta "does" monitor everything users do in the In-App Browser without their consent, in the absence of factual allegations explaining why they believe that is true. *See Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC,* No. 17-CV-03805-LHK, 2018 WL 1805516, at *11 (N.D. Cal. Apr. 16, 2018) (rejecting claims of unfair business practices as conclusory, notwithstanding allegations that defendants "allowed [their] employees to give away liquor by pricing it at $.01," "gave kickbacks, free samples, and other unlawful incentives to customers," and "threatened to cut off supplies to customers who did not buy enough liquor," because "Plaintiffs do not allege any specific instance of any of these practices occurring, nor do Plaintiffs explain their basis for believing that Defendants engaged in these practices").

cited by the dissent were too ambiguous to allow a determination of the relevant legal relationship between the parties. The facts of the case have no resemblance to those here.

DEFENDANT'S REPLY ISO MOT.
TO DISMISS CONS. COMPLAINT
CASE NO. 3:22-cv-05267-AMO

Plaintiffs try to bridge the gap by asserting in their Opposition that, beyond the Krause Post, they conducted their own, "months-long investigation" in support of their allegations. Opp. at 6; *see also id.* at 11. But their Complaint does not mention a single word about any supposed independent investigation they conducted into the In-App Browser, let alone any *facts* about what the investigation entailed or what it showed—such as facts about any testing Plaintiffs conducted on the In-App Browser or what the testing purportedly revealed.[11] As with any unexplained belief, Plaintiffs' unpled "investigation" does not carry their burden to plead "sufficient facts" supporting their entitlement to relief. *See InfoStream Grp., Inc. v. PayPal, Inc.*, No. C 12-748 SI, 2012 WL 3731517, at *5 (N.D. Cal. Aug. 28, 2012) (dismissing antitrust claim as implausible where plaintiffs failed to allege factual basis for their "belief" that defendant had an ownership interest in competitors).

Lacking any facts capable of showing that Meta actually does engage in nonconsensual monitoring of users' activity in the In-App Browser, Plaintiffs attempt to rely on their allegations that Meta had the motive and the means to do so. They point to their allegations that Meta had a financial "motivation" to circumvent Apple's ATT policy, Opp. 15, and they argue that "Krause's reporting demonstrates that the technical aspects of their claims are plausible." *Id* at 16. However, Krause's discussion of "what is *possible* on a technical level," Ex. 1 at 3 (emphasis added), does not imply anything about what Meta actually does. And merely alleging that a defendant has a motive to engage in alleged misconduct does not provide a plausible basis to allege the misconduct has actually occurred. Otherwise, any plaintiff could bring a lawsuit against any technology company based on a mere suspicion that the company is collecting data in allegedly unlawful ways, as a plaintiff could always assert that data is valuable and companies have an incentive to collect as much of it as possible. Such free-floating surmise is not the stuff that a well-pled complaint is made of. *See, e.g., Alert Enter., Inc. v. Rana*, No. 22-CV-06646-JSC, 2023 WL 2541353, at *4 (N.D. Cal. Mar. 16, 2023) (finding plaintiff's "suspicion" that defendant "received confidential

---

[11] Notably, only a few *weeks*, not months, passed between the publication of the Krause Post and the filing of the *Mitchell* Complaint (which contained all of the same foundational facts as the operative Complaint)—making it hard to see how they could have conducted a "months-long" investigation of the facts before deciding to bring suit. Mot. at 5-6.

information" insufficient to "support[] a plausible inference" that it did); *People.ai, Inc. v. SetSail Techs., Inc.*, No. C-20-09148-WHA, 2021 WL 2333880, at *2 (N.D. Cal. June 8, 2021) (finding allegation that it was "highly likely" defendant was infringing patent insufficient to render infringement claim plausible); *Dydzak v. United States*, No. 17-CV-04360-EMC, 2017 WL 4922450, at *8 (N.D. Cal. Oct. 31, 2017) (finding allegations that defendants had the "opportunity" to conspire insufficient to render conspiracy allegations plausible).

Ultimately, Plaintiffs simply seek a free pass to discovery, arguing that the parties' "diverging conclusions" about the Krause Post merely "underscore the need for a developed record." Opp. at 16. But the Rule 8 plausibility standard is specifically designed to prevent "the use of discovery to engage in 'fishing expedition[s]'" based on sheer "speculation." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) (alteration in original, citation omitted) (affirming dismissal with prejudice); *see also EVOX Prods., LLC v. Verizon Media Inc.*, No. CV-202852, 2021 WL 3260609, at *3 (C.D. Cal. May 5, 2021) ("Plaintiff cannot use discovery as a fishing expedition in order to support conclusory claims"). Plaintiffs are not entitled to proceed to discovery based on a mischaracterization of a blog post coupled with their own supposition that Meta is engaged in misconduct. They instead "must [] plead sufficient facts to make a claim plausible as opposed to merely speculative" and give Meta "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Matilock, Inc. v. Pouladdej*, No. 20-cv-01186-HSG, 2020 WL 3187198, at *4 (N.D. Cal. Jun. 15, 2020) (citing *Twombly*, 550 U.S. at 555). "Plaintiff[s] may not sidestep these obligations by asserting that [their] conclusory allegations are made 'on information and belief'" or based on some undisclosed investigation; nor can they simply "fill in the necessary details later." *Id.* at *4; *see also In re Ashworth, Inc. Sec. Litig.*, No. 99-CV-0121, 2000 WL 33176041, at *5 (S.D. Cal. July 18, 2000) ("a complaint made upon investigation of counsel is the same as a complaint made on information and belief"). That is precisely what Plaintiffs are seeking to do here—and why their claims should not be allowed to proceed.[12]

---

[12] Plaintiffs assert that their Complaint does not resemble that in *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1188 (N.D. Cal. 2020), where Plaintiffs' allegations rested "on information or belief" and "hedg[ed] on whether Facebook actually does what [the plaintiff] accuses." Opp. at 15. But, when stripped of its allegations mischaracterizing the Krause Post, the Complaint meets this

### D.     Plaintiffs' CFAA Claim Fails

#### 1.     Plaintiffs Conflate Alleged Data Misuse with Exceeding Authorized Access

Plaintiffs argue that Meta "exceed[ed] authorized access" to Plaintiffs' devices by accessing "Plaintiffs' activities on third-party websites," which Plaintiffs assert "were off limits to Meta by [Plaintiffs'] own clear directive." Opp. 18. But they continue to conflate the alleged *misuse of data* with unlawful *access to part of a device*. It is the latter that is required for a CFAA claim—and that Plaintiffs do not, and cannot, allege.

Plaintiffs acknowledge the correct legal standard for "exceeding unauthorized access" but go on to misapply it. As Plaintiffs note, in *Van Buren v. United States*, the Supreme Court explained that "exceeding authorized access" consists of accessing "particular areas of the computer—such as files, folders, or databases—that are off limits" to the defendant. 141 S. Ct. 1648, 1662 (2021). As the Court alternatively put it, whether suit is brought under the CFAA's "exceeding authorized access" clause or its "accesses without authorization" clause, "liability under both clauses stems from a gates-up-or-down inquiry—one either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Id.* at 1649.

Plaintiffs make no allegations of Meta accessing a part of their devices that was somehow behind a "gate" that Meta had to breach in order to access. Nor could they, as the only part of their devices that they allege data was collected from is *Meta's own app. See generally* Compl. ¶¶ 81-96. There obviously is no gate that prevents Meta from accessing its own app, nor do Plaintiffs allege one. Rather, if there is any gate, Meta is necessarily inside the gate since it is the owner and operator of the app. *See* Mot. at 17-19 (citing cases).[13]

description to a tee: any allegation that Meta actually does engage in the purported misconduct rests on "information and belief," or on invalid inferences about what Meta *could* do.

[13] Plaintiffs claim that *In re iPhone Application Litig.* supports their position, quoting: "Apple arguably exceeded its authority when it continued to collect geolocation data from Plaintiffs after Plaintiffs had switched the Location Services setting to 'off.'" Opp. at 17 (quoting 844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012)). However, the case was decided before *Van Buren*, and the proposition was arguable only because it was still unsettled at the time whether data misuse could constitute exceeding authorized access. Moreover, the court made clear that, to the extent the plaintiffs were arguing that Apple was not authorized to access geolocation data based on the user's settings, the argument failed because "Apple had authority to access the iDevice and to collect

1   Plaintiffs claim that they "shut the gate" to Meta's access by opting out of "tracking"

2   through Apple's ATT policy. Opp. at 18. But, as Plaintiffs' own allegations make clear, the ATT

3   policy is about prohibiting certain *uses* of a user's data: the ATT policy "require[s] app developers,

4   like Meta, to obtain users' express consent before *tracking their activity on third-party websites*

5   *for the purposes of advertising or sharing the information with data brokers*." Compl. ¶ 4

6   (emphasis added); *see also id.* ¶ 68 (showing Apple prompt advising user that if they consent to

7   tracking their "data will be *used* to measure advertising efficiency"); Ex. 3 at 1 (explaining ATT

8   policy). Whether Meta allegedly used data for an improper purpose (i.e., for advertising purposes

9   prohibited by the ATT policy) is irrelevant to CFAA liability. *See United States v. Nosal*, 676 F.3d

10  854, 858 (9th Cir. 2012) (en banc) (holding that "the phrase 'exceeds authorized access' in the

11  CFAA does not extend to violations of use restrictions"); *see also Van Buren,* 141 S. Ct. at 1652

12  (holding that the CFAA does not cover "hav[ing] improper motives for obtaining information that

13  is otherwise available to the" defendant). The question under the CFAA is whether Meta lacked

14  access in the first place to the part of Plaintiffs' devices from which the data was collected; and

15  there is no allegation in the Complaint, let alone a plausible one, that declining consent to the ATT

16  policy somehow erects a gate that prevents an app developer from accessing parts of their own

17  app. Indeed, the very premise of the Complaint is that Meta supposedly directed users to its In-

18  App Browser as a "workaround" to the ATT policy—precisely because it *had access* to user data

19  in its own app versus a browser provided in a different app. *E.g.*, Compl. ¶ 81 (alleging that,

20  because "Meta automatically reroutes the user to its own in-app web browser instead of the users'

21  built-in web browser," "[t]hird-party websites are rendered inside the app—enabling Meta to

22  monitor everything happening").

23      In short, because the alleged conduct took place entirely within Meta's own app, there can

24  be no claim of "computer trespass" as required to sustain a cause of action under the CFAA.[14]

25  geolocation data as a result of the voluntary installation of the software" at issue. *In re iPhone,* 844
    F. Supp. 2d at 1066.

26

27  [14] None of the cases cited in the Opposition support a different result. In *Facebook, Inc. v. Power
    Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016), the plaintiff was the operator of the website in
    question and sent a cease-and-desist letter prohibiting the defendant from continuing to access it

28  altogether. *See id.* at 1067 ("The record shows unequivocally that Power knew that it no longer

2.   <u>Plaintiffs' "Loss" Allegations Are Insufficient Under the CFAA</u>

Plaintiffs do not even attempt to argue that they pled "damage" within the limited meaning of 18 U.S.C. § 1030(e)(11), and instead contend that their allegations that Meta "decreas[ed] the value" of their personal information and "imped[ed] their ability to control the dissemination" of that information, Opp. at 19, are sufficient. They are not. The Ninth Circuit has made clear that the statute's "loss" definition does not cover the alleged loss of value of personal data. *See Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262-63 (9th Cir. 2019); *see also Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 486 (N.D. Cal. 2021) (dismissing CFAA claim where plaintiffs "do not explain how to value the alleged 'loss of use and control' of their financial information and offer no authority that such a loss is cognizable for purposes of the CFAA"). Plaintiffs attempt to dismiss the ruling in *Andrews* as dicta, but the Ninth Circuit expressly addressed—and rejected—virtually identical "lost value" allegations. *See Andrews*, 932 F.3d at 1262 (allegation that plaintiff "lost the value of [his] information and the opportunity to sell it" did not meet the CFAA's "narrow conception of loss"). Plaintiffs offer nothing to distinguish their allegations, nor do they cite any authority where similar allegations were found sufficient to show "loss" under the CFAA.[15]

**E.   Plaintiffs' Equitable Relief Arguments Are Contrary to Ninth Circuit Law**

As Meta has explained, Plaintiffs do not plausibly allege that they lack an adequate remedy at law and therefore their equitable claims must be dismissed under *Sonner v. Premier Nutrition,*

---

had authorization to access Facebook's computers, but continued to do so anyway."). In *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147 (C.D. Cal. 2018), the court sustained a CFAA claim based on a cease-and-desist letter prohibiting the defendants from violating the plaintiff's website terms of service, *id.* at 1169, but the decision was issued before *Van Buren* and is inconsistent with its reasoning. And in *WhatsApp, Inc. v. NSO Group Technologies Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020), the court sustained a CFAA claim based on allegations that the defendants created a program to "evad[e] . . . security features" and "manipulat[e]" technical call settings on plaintiff's—i.e., WhatsApp's—servers. *Id.* at 681-82. There are no remotely similar allegations at issue here, nor could there be since Meta is the owner of the app from which the data was allegedly collected.

[15] Plaintiffs also cannot overcome their failure to plead any of the CFAA aggravating harm factors. *See* 18 U.S.C. § 1030(g) (cross-referencing factors set forth in § 1030(c)(4)(A)(i)). Plaintiffs speculate that a combined loss of over $5000 is "more than plausible" based on "the very large [putative] class," Opp. at 19, but Plaintiffs cannot rely on the purported number of absent class members to reach the statutory minimum. *See Cottle*, 536 F. Supp. 3d at 486 (rejecting claim that "the CFAA's $5000 threshold" was satisfied "by virtue of the number of individuals in the putative class"). Plaintiffs also fail to offer any factual or legal support (in either the Complaint or the Opposition) for their baseless claim that access to unspecified "HIPPA-protected [*sic*] health information" put "public health imperatives at risk," Opp. at 19.

---

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*Corp.,* 971 F.3d 834 (9th Cir. 2020), and its progeny. Mot. at 18-19; *see also Stafford v. Rite Aid Corp.*, No. 17-CV-1340 TWR, 2023 WL 2876109, at *4 (S.D. Cal. Apr. 10, 2023) (boilerplate allegations are insufficient to "*plausibly* allege 'the inadequacy of a legal remedy'" (emphasis added) (citation omitted)). In response, Plaintiffs do not dispute that *Sonner* is applicable or that they seek monetary damages for the same alleged conduct, Opp. at 19-20, nor do they respond to any of the cases regarding the insufficiency of conclusory allegations of the lack of an adequate legal remedy, *see* Mot. at 19. Rather, they contend that *Sonner* does not apply at the pleading stage. Opp. at 20. This argument is meritless.

Any suggestion that *Sonner* does not bind until the late stages of the case is inconsistent with *Guzman v. Polaris Industries, Inc.*, 49 F.4th 1308 (9th Cir. 2022), and has been rejected numerous times. For example, in *Guzman*, the Ninth Circuit held that because the plaintiff had an adequate legal remedy, the district court was required to dismiss the plaintiff's UCL claim.[16] Numerous courts in the Circuit have followed suit, holding that "a plaintiff's failure to plead inadequate remedies at law dooms the claim for equitable relief *at any stage*." *Audrey Heredia et al v. Sunrise Senior Living LLC*, No. 8:18-cv-01974, 2021 WL 819159, at *4 (C.D. Cal. Feb. 10, 2021) (emphasis added).[17]

---

[16] The *Guzman* court explicitly rejected attempts to limit *Sonner* to its particular facts or procedural posture, stating that "[n]othing in *Sonner*'s reasoning suggested that its holding was limited to cases in which a party had voluntarily dismissed a damages claim to avoid a jury trial." 49 F.4th at 1313. *Guzman* also forecloses Plaintiffs' theory that their legal claims may ultimately fail, leaving them with only equitable claims to pursue. In *Guzman*, the Ninth Circuit rejected the plaintiff's argument that he should be permitted to pursue equitable claims because his potential legal claims were time-barred. *Id.* at 1312-13. Because the plaintiff could have pursued legal relief in a timely manner, those claims were adequate. It follows that Plaintiffs here should not be permitted to pursue equitable relief simply because their legal claims may ultimately fail.

[17] *See also Smith v. Apple, Inc.*, No. 21-CV-09527-HSG, 2023 WL 2095914, at *3 (N.D. Cal. Feb. 17, 2023) (dismissing UCL claim based on *Sonner* and *Guzman* and reading *Guzman* "as precluding pleading equitable remedies in the alternative"); *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-cv-03131-JSC, 2021 WL 1176645, at *7-8 (N.D. Cal. Mar. 29, 2021) (dismissing UCL claim and holding that "it is of no moment that *Sonner* was decided at a much later stage in the litigation"). The few decisions identified by Plaintiffs that post-date *Guzman* relied on limiting *Sonner* to its facts, which *Guzman* plainly rejected. *Compare Guzman*, 49 F.4th at 1313 (rejecting plaintiffs' "attempt to distinguish *Sonner*" on its facts) *with Katz-Lacabe v. Oracle Am. Inc.*, No. 22-cv-04792-RS, 2023 WL 2838118, at *13 (N.D. Cal. Apr. 6, 2023) (declining to apply *Sonner* because it was decided in "circumstances which do not even remotely exist here"); *Brown v. Food for Life Baking Co.*, 2023 WL 2637407, at *7 (N.D. Cal. Feb. 28, 2023) (similar).

1

### F.     Plaintiffs' UCL Arguments Have Been Roundly Rejected

2      Despite clear case law to the contrary, Mot. at 19-20, Plaintiffs argue that "[d]iminution of

3     value" of personal data "is a recognized type of economic injury under the UCL." Opp. at 20-21.

4     But *Moore v. Centrelake Medical Group*—cited in Meta's opening brief but ignored in the

5     Opposition—concludes the opposite. 83 Cal. App. 5th 515, 538 (2022). There, the court held that

6     allegations that plaintiffs had "suffered '[a]scertainable losses in the form of deprivation of the

7     value of their PII,'" and that "a market for it existed," were "insufficient to support UCL standing."

8     *Id.* (alteration in original). Plaintiffs' allegations here are exactly the same. Opp. at 20 (citing

9     Compl. ¶¶ 58-60, 175). As in *Moore*, Plaintiffs fail to "allege they ever attempted or intended to

10    participate in this market [for their information], or otherwise to derive economic value from their

11    PII." *Moore,* 83 Cal. App. 5th at 538. As highlighted in *Katz-Lacabe*, cited by Plaintiffs, the

12    "weight of the authority in the district and the state" is that "the 'mere misappropriation of personal

13    information' does not establish compensable damages" under the UCL. 2023 WL 2838118, at *8

14    (cited Opp. at 9-10, 20) (quoting *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615

15    (9th Cir. 2021), and citing additional cases).[18]

16    ### III.    CONCLUSION

17     For the foregoing reasons, Meta respectfully requests that this action be dismissed in its

18    entirety, without leave to amend.

19    Dated: May 23, 2023                              LATHAM & WATKINS LLP

20                                                     By:  */s/ Elizabeth L. Deeley*
21                                                     Elizabeth L. Deeley (Bar No. 230798)
                                                        *elizabeth.deeley@lw.com*
22                                                     Sheridan Caldwell (Bar No. 324743)
                                                        *sheridan.caldwell@lw.com*
23                                                     505 Montgomery Street, Suite 2000
                                                       San Francisco, CA  94111-6538
24                                                     Telephone:  +1.415.391.0600

25                                                     Serrin Turner (*pro hac vice*)
                                                        *serrin.turner@lw.com*
26                                                     Marissa Alter-Nelson (*pro hac vice*)
                                                        *marissa.alter-nelson@lw.com*

27

28    ---
[18] The remainder of the case law that Plaintiffs cite pre-dates *Moore*, Opp. at 20-21, and, in any event, could not supersede it because a federal court "exercising diversity jurisdiction must follow state substantive law . . . when adjudicating state law claims." *Sonner*, 971 F.3d at 839.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1

2

1271 Avenue of the Americas
New York, New York 10022-4834
Telephone:  +1.212.906.1200

3

*Attorneys for Defendant Meta Platforms, Inc.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

DEFENDANT'S REPLY ISO MOT.
TO DISMISS CONS. COMPLAINT
CASE NO. 3:22-cv-05267-AMO